EDMONDS *v.* STATE OF INDIANA.

[No. 30,479.  Filed April 15, 1966.]

Ronald S. Lieber, of Indianapolis, for appellant.

John J. Dillon, Attorney General, and David S. Wedding, Deputy Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from a conviction of first degree murder in the perpetration of the crime of robbery. From the evidence it appears that the appellant (defendant below) went to the shoe shop of the decedent, Joseph H. Ammer, and attacked him in an attempt to rob. Ammer got a knife and cut the appellant about the hand. The appellant then began beating the decedent over the head, fracturing his skull, and finally killed him. On trial, the defendant was found guilty and sentenced to life imprisonment.

The specifications in the assignment of errors are each improper under Rule 2-6 except that which claimed error in the overruling of the motion for a new trial. Rule 2-6 provides that each error relied upon "up to the time of filing of such motion" (new trial) shall be included in the motion for a new trial and that the overruling of said motion "shall be the only means of raising said asserted errors on appeal." However, most if not all of the improperly assigned errors are included in quite a voluminous motion and supplemental motion for a new trial, constituting approximately 85 pages of the brief. The overruling of this motion is assigned as error.

This Court will not search the record nor this voluminous motion for a new trial to discover error. We will consider as waived all allegations and specifications in the motion for a new trial except those specifically and clearly designated in the argument section of the brief, as provided in Rule 2-17 (e). No contention is made in the brief that the evidence is insufficient to support the verdict.

It is first contended that a search of appellant's private dwelling was illegal, and that as a result of the search and seizure, a bloody pair of trousers and shirt were obtained. However, the record fails to show that these items were introduced in evidence or presented to the jury. There is no record, so far as we can find, or pointed out in appellant's brief, where there was any attempt to introduce any evidence obtained from any alleged illegal search or seizure; nor does the record or brief set out the language of any objection thereto. We therefore have no error presented to us for consideration on this point.

It is next argued that a confession obtained during the period of incarceration was inadmissible because the arrest was without a warrant; the officers failed to inform the appellant of their authority to arrest him; and finally, because appellant was not taken promptly before a magistrate. It is also contended that the appellant requested counsel and this was denied him prior to and during the confession. The record does not bear out the substance or conclusions of these contentions. It is true that no warrant was issued for the appellant's arrest, yet the evidence shows without question probable cause—in fact, very compelling grounds existed for the arrest of the appellant at the time.

The testimony of the arresting officer himself is as follows:

"DIRECT EXAMINATION OF SPURGEON DAVENPORT:

"A. No, I next talked to Sgt. Kramer and I next talked to Sgt. Mullin, then I next read the inter-department report submitted by Sgt. Mullin relative to picking up the defendant by a cab driver at 1868 Sugar Grove Avenue at 4:36 P.M. I also talked to Sgt. Finnell and examined a piece of evidence recovered that consisted of a brown billfold with the identification of Mr. Joseph Ammer. I was also with Det. Sgt. White and Rogers and Det. Kramer and Det. Finnell when they checked the location of 21st and Boulevard looking for witnesses that had seen the defendant or had been with the defendant in the Boulevard Tap Room the

evening of August 7, 1962, wherein the defendant had his hands dressed, wherein the defendant had visited the washroom where the billfold with the identification of Mr. Ammer had been found, and also visited the residence at 344 West 21st Street and were able to ascertain by a Richard Cherry, who lived at that address, the defendant had been at his home, his hands bloody and bleeding, the afternoon of August 7, 1962, and that he left that location with Mr. Cherry to go to 21st and Boulevard Place where he had drank at the tavern with Carole Graham and Willis McDonald. I had taken Mr. Cherry out to the car.

"Q. What time was it when you took Cherry out?

"A. The morning, the 8th of August, 1962 at approximately 10:30.

"Q. At 10:30?

"A. Approximately 10:30.

"Q. Where did you take Cherry?

"A. He got in the car with Sgt. Kramer and Finnell and went with them, with Det. Rogers, White and I following, to 2039 Dexter, the home of a relative, Lillie Mae Matchen. He pointed the place out as the place where Mr. Calvin, as he knew him, worked. I also had conversation with Mrs. Matchen a little later whether or not Calvin worked for her or her husband. We ascertained he was there the day before—there that morning with his hands cut.

"Q. That morning were his hands cut? You mean the morning of the 8th?

"A. That is right. . . .
\* \* \* \* \* \* \*

"Q. Then at that time you arrested the defendant on a charge of pre-murder, did you?

"A. On information and belief he was placed under arrest for pre-murder."

There is other evidence supporting these facts, including the testimony of another witness that he had seen the appellant leaving the decedent's shop on the day and at the time of the murder and that he had informed the police, giving them a description of the appellant. The evidence further shows from another police officer that the appellant was informed at the time he was arrested what the . charges were. We

therefore find that the evidence supports the legality of the action of the law enforcement officers. *McCoy et al.* v. *State* (1958), 237 Ind. 654, 148 N. E. 2d 190; *Johns* v. *State* (1956), 235 Ind. 464, 134 N. E. 2d 552; 3 I. L. E., Arrest and Recognizance, Sec. 4, p. 42.

The contention that the appellant was held for an unreasonably long period before being brought before a magistrate and being deprived of counsel, even though he requested same, is not borne out by the record nor the evidence. The record shows that the appellant was arrested on August 8, 1962 at 2:30 p.m. on the charge of murder. He was escorted immediately to police headquarters and made a confession within one hour. During that time he was advised repeatedly that he was entitled to counsel and that he could talk to his lawyer and that any statement he made must be voluntary. The testimony of one of the officers present at the time the alleged confession was made is as follows:

> "A. No, I told him, 'If you want to talk to me I am willing to listen. Nobody is going to make you.' If you want to talk to your lawyer before you talk to me, it is alright, too.' He said to me, 'I don't have money for a lawyer.' I said, 'You will understand this, you can't go to trial on this type of offense without an attorney, even though you can't afford one. The State will have to pay a counsel to defend you to go to trial on something like this. If you want to talk to a lawyer before you talk to me, alright. Any statement you make will have to be voluntary and I will use it in court against you, I will be honest. You are going to be charged out-right with murder of Mr. Ammer. What you tell me now is going to be your story when you go to court, if you agree to talk.' . . ."

Another officer testified as follows:

> "I told him he could run me out of the room the same as he did Rogers and that any statement he made would have to be of a vuluntary [sic] nature, that I was not mad at him and hoped he was not mad at me. I had a job to do, just like with any other person charged with a criminal offense. He said he understood that. I explained he could have a lawyer of his choice, if he

preferred to consult an attorney before talking to any police at all. He said he did not have money to get a lawyer. I explained to him he could not go to trial on a criminal offense of that nature without an attorney and if he could not afford an attorney the court and State of Indiana would pay an attorney to defend him. I also asked whether or not he had been treated alright up to that point and he said he had been treated nice. Then I explained to him that what we thought was the State's case. I said, 'You run Rogers out because he accused you of the murder of Mr. Ammer.' I said, 'If you want to know what evidence we have I will be glad to explain what we have.' I did. After explaining everything to him, he said to me, 'What if it is First Degree Murder, what does that mean?' I said that on conviction you would receive one of two penalties, life imprisonment or death in the chair. Then he asked me, 'Well, now, if I did it, what would be my chances of getting life imprisonment?' I said, 'Well, I will explain it to you this way. Out of all the murders that occurred in Marion County, Indiana in which there has been an arrest and as long as I have been in the police department, at that time twenty eight years, I said in the past twenty eight years I don't know of any individuals charged with first degree murder and convicted in Marion County that received the death penalty.' I said, 'You can judge from that, evaluate what your chances are. . . .' "

Other witnesses present at the time the appellant confessed specifically stated that he did not ask for his attorney and that at no time was he refused an attorney. The appellant relies upon *Watts* v. *State* (1949), 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801; *McNabb* v. *United States* (1943), 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819; and *Escobedo* v. *Illinois* (1964), 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977.

These cases, in our opinion, do not support the appellant because the factual situation is decidedly different. In the *Escobedo* case the accused was interrogated for a long period of time and during that time he asked repeatedly for his attorney, who was waiting outside to see him.

It is well settled that this Court will not weigh the evidence on appeal. The appellant's brief fails to set forth the testi-

mony or the transcript page where any such testimony upon which he relies may be found.

A further contention is made that the court erred in the sustaining of objections to certain exhibits which appellant sought to introduce as part of the cross-examination of a witness. The exhibits and the testimony in connection therewith are not set forth in the brief in sufficient detail for this Court to give the question competent consideration. No transcript citation is given for reference.

It is next contended that the court erred in overruling appellant's motion to exclude two members of the Indianapolis Crime Commission from the courtroom. There is no evidence that these individuals were guilty of any misconduct and there is no evidence that they in any way influenced or prejudiced defendant's cause. Trials are normally open to the public under the principles of a fair trial, and unless some sound reason exists for excluding individuals, we cannot hold that the court erred in permitting a person to remain in the courtroom during a trial. The appellant made no motion for a mistrial or that the jury be discharged as a result of any alleged prejudicial action of the court. We find no error presented to us for consideration. *Rexroat* v. *State* (1964), 245 Ind. 688, 201 N. E. 2d 558.

It is next contended that the court was biased and prejudiced against the appellant because the court interrogated the court-appointed psychiatrist after both parties had concluded their examination and cross-examination. We have examined the questions and find no prejudice exhibited by the court. We further find that every time the appellant made any objection to any of the court's questions, the court acceded to the appellant's objection. So far as appellant's brief is concerned, no questions, objections thereto or any record are cited specifically upon the proposition argued.

It is well settled that the court may ask proper questions of a witness in order to develop the truth or present some

part of the facts that may have been overlooked by the ██ parties. We find no error committed by the court. *Rexroat* v. *State* (1964), supra; *Colee* v. *State* (1881), 75 Ind. 511.

The appellant further contends that the court erred in giving court's instructions 50 and 51. The appellant in his brief does not cite the specification in the motion for a new trial or the transcript page where the objections to the instructions may be found. We have taken the time, however, to check the motion for a new trial, and fail to find that any alleged error is claimed by reason of the giving of court's instructions 50 and 51, and therefore no alleged error is presented for our consideration.

Finally, it is claimed that the court failed to instruct the jury as to what constituted robbery. In this connection, there is no such specification listed in the motion for a new ██ trial and there is no instruction tendered on this point by the appellant. No error is claimed for refusing to give any tendered instruction. *Hutton* v. *State* (1965), 246 Ind. 589, 207 N. E. 2d 816; 9 I. L. E., Criminal Law, Sec. 604, p. 99.

For the reasons stated, the judgment of the trial court is affirmed.

Myers, C. J. and Rakestraw, J., concur. Jackson, J., concurs in result. Achor, J., not participating.

NOTE.—Reported in 215 N. E. 2d 547.