THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
J. B. HAIRSTON, Defendant-Appellant.

Third District   No. 75-31

Opinion filed June 30, 1976.—Rehearing denied July 22, 1976.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

James E. Hinterlong and Russell Boothe, both of Illinois State's Attorneys Association, of Ottawa, for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant was convicted by a jury on an indictment charging murder, and was sentenced to the penitentiary. He argues here (1) that the evidence fails to show him guilty of murder beyond a reasonable doubt, and (2) that the circuit court erred in giving instructions as to the lesser included offense of involuntary manslaughter by failing to define the

essential element of "recklessness." It is claimed that this latter omission was substantially compounded in closing arguments by the prosecutor's misleading statements as to the meaning of the word.

About 10 p.m. on June 30, 1974, defendant was visiting with friends while drinking alcoholic beverages at the Harlem Inn in Kankakee. Willie May Robinson entered the premises about this time and joined Hairston with the remark "Where the hell you been all night?" An argument followed and the parties separated. According to defendant's testimony, Ms. Robinson was a girlfriend of his who had been threatening to break up his marriage.

Sometime after he left the Harlem Inn, defendant arrived at the White Front Cafe and observed that Ms. Robinson was already there standing by a jukebox. He went to a pool table, picked up some pool balls and began throwing them at her. He then reached into his jacket and pulled out a pistol and fired it, hitting the pedestal of a table. Ms. Robinson then sought refuge in a small washroom measuring 3½ feet wide and 6 feet long. Defendant pursued her and just as she closed the door, he fired again through the door at waist height. Before entering the washroom, defendant asked a patron to call the police. He then went into the room and cradled Ms. Robinson until an emergency vehicle removed her to the hospital where she later died. The fatal projectile fired by defendant had entered decedent's body on her right side just below the rib cage, and death was attributed to a massive hemorrhage related to the wound. Although the defense offered proof that defendant was a peaceful person who was highly intoxicated at the time, several witnesses, including police officers, testified that defendant was able to walk and converse normally and was not intoxicated.

■■ Where a conflict exists, as here, as to whether defendant was so extremely intoxicated as to entirely suspend the power of reason (see *People v. Lion*, 10 Ill. 2d 208, 139 N.E.2d 757 (1957)), the judgment of the jury as to which version is correct cannot be disturbed on review where, as here, it is not so palpably without evidentiary support as to raise a reasonable doubt as to guilt. *People v. Rose*, 124 Ill. App. 2d 447, 259 N.E.2d 393 (2d Dist. 1970).

■■ Defendant contends that the facts in this case, under the precedent in *People v. Felton*, 12 Ill. App. 3d 201, 298 N.E.2d 372 (1st Dist. 1973), mandate a reduction of his charge to involuntary manslaughter. We disagree.

First, in *Felton*, defendant and decedent had been arguing verbally for a considerable time in decedent's apartment as to whether decedent had sired defendant's unborn child. Although such verbal provocation could not justify a killing, it demonstrated a mental state of passion and disregard for an unjustifiable risk rather than an intention to kill. In that

case, defendant did not pursue a fleeing victim, or fire a gun through a door that he had just closed; instead, she picked up his weapon and walked out of his apartment. The door closed automatically when she left, and she thereafter turned and fired intending to scare her boyfriend. In the case at bar, the jury rejected the claim that defendant's mental faculties were so impaired by intoxication as to preclude an intention to kill, and the evidence clearly shows that defendant pursued decedent and fired at her just as she closed the door. Clearly, defendant here knew decedent was behind the door in a small washroom, not a large apartment as in *Felton,* and he must be held to have intended the natural, probable and foreseeable consequences of his act. If in *Felton,* defendant did not know the exact whereabouts of decedent in the apartment room when she turned and fired, it is plain from the record here that defendant did know the whereabouts of his victim since she had just closed the door. In directing that police be called before he entered the washroom, it is evident defendant was aware that he accomplished what he intended. We conclude that the jury's finding that defendant knew his act created a strong probability of death or great bodily harm to another and was guilty of murder is supported by the record beyond reasonable doubt.

■■ Defendant submitted the instructions on involuntary manslaughter but supplied nothing defining the essential term "recklessness." We reject his contention now that the court's failure, *sua sponte,* to supply a definition of the term "recklessness" was prejudicial error. This contention was not preserved by post trial motion and must, therefore, be deemed waived. *(People v. Irwin,* 32 Ill. 2d 441, 207 N.E.2d 76 (1965).) Moreover, the omission would not constitute prejudicial error in any event since the legal definition of the term does not vary from its commonly understood usage *(People v. Brown,* 9 Ill. App. 3d 730, 293 N.E.2d 1 (2d Dist. 1973); *People v. Maldonaldo,* 3 Ill. App. 3d 216, 278 N.E.2d 225 (1st Dist. 1971)), and the circuit court was, therefore, under no duty to give instructions not requested by counsel. *(People v. Orr,* 24 Ill. 2d 100, 180 N.E.2d 501 (1962); *People v. Springs,* 51 Ill. 2d 418, 283 N.E.2d 225 (1972).) It also appears that defendant's failure to supply an instruction defining the term was a tactical maneuver by which he was allowed the latitude of arguing that reckless "means just what happened in this case * * * not having regard for your actions that you should have."

No reversible error being shown, the judgment of the circuit court is affirmed.

Affirmed.

ALLOY, P. J., and STENGEL, J., concur.