Larry G. JOHNSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 3–680A165.

Court of Appeals of Indiana,
Third District.

Sept. 29, 1981.

Rehearing Denied Nov. 25, 1981.
See 428 N.E.2d 248.

Harriette Bailey Conn, Public Defender, Robert H. Hendren, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Larry G. Johnson guilty of battery,[1] a Class C felony. The trial court entered a judgment of conviction accordingly and sentenced Johnson to the Indiana Department of Correction for a period of five years.

On appeal, Johnson raises the following issue for review:

> Did the trial court err in refusing to give the lesser included offense instructions tendered by Johnson?

Reversed.[2]

On August 6, 1978, Johnson and Brian Jones were playing basketball at a playground in Fort Wayne, Indiana. While trying to slap the ball away from Johnson, Jones fouled Johnson. Jones immediately acknowledged that he had fouled Johnson, but Johnson accused Jones of committing the foul intentionally. The game resumed without further altercation. In the next game, Johnson and Jones collided on the court. As Jones attempted to stand, Johnson stepped over him. Jones asked Johnson if "he did that on purpose." Johnson replied, "Nigger, if you want to start some shit, we can start it." Johnson then drew a handgun from his pocket and shot Jones in the chest. For his conduct, Johnson was charged with and convicted of committing a battery against Jones.

Johnson contends the trial court committed reversible error when it refused to instruct the jury upon the offense of criminal recklessness, which he contends is a lesser included offense of battery. A battery of

---

1. IC 1976, 35–42–2–1 (Burns Code Ed., 1980 Supp.).

2. Because the disposition of the lesser included offense issue requires the reversal of Johnson's conviction, other issues raised on appeal need not be addressed.

the Class C felony type is committed when a person "knowingly or intentionally touches another person in a rude, insolent, or angry manner," and such touching "results in serious bodily injury to any other person or . . . is committed by means of a deadly weapon." IC 1976, 35–42–2–1 (Burns Code Ed., 1980 Supp.). Johnson sought a jury instruction upon the offense of criminal recklessness, which is defined in IC 1976, 35–42–2–2(b) (Burns Code Ed., 1979 Repl.),[3] as follows:

"(b) A person who recklessly, knowingly, or intentionally inflicts serious bodily injury on another person commits criminal recklessness, a class D felony."

Johnson argued that his conduct constituted criminal recklessness at the most because his use of drugs before playing basketball prevented him from formulating the requisite intent for the commission of a battery. In support of his theory of defense, Johnson tendered the following instructions:

"No. 4: If the jury is unable to find that the Defendant knowingly or intentionally committed the acts he has been charged with but does find that the Defendant committed those acts recklessly, the Defendant may be found guilty of recklessly inflicting serious bodily injury on another person, a lesser included offense.

"No. 5: If the evidence shows beyond a reasonable doubt that the defendant recklessly, knowingly or intentionally inflicted serious bodily injury on another person, the jury may find the defendant guilty of Criminal Recklessness, a Class D felony."

The trial court refused to give both instructions to the jury.

The test for determining the propriety of giving an instruction upon a lesser included offense was delineated by this Court in *Roddy v. State* (1979), Ind.App., 394 N.E.2d 1098. Relying upon the directives of the Indiana Supreme Court set forth in *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208, this Court developed a two-step methodology that must be employed to determine whether a defendant may properly be convicted of a lesser offense.[4] The first step focuses upon determining whether the lesser offense is "included" within the greater offense. This inquiry requires an examination of

"the criminal statutes which define the greater and lesser offenses, together with the allegations of fact contained in the charging instrument. *Lawrence v. State, supra.* From this examination, the court determines whether a conviction of the greater offense, as it is charged in the indictment or information, requires proof of all essential elements of the lesser offense, plus an additional element which distinguishes the two offenses."

*Roddy, supra,* 394 N.E.2d at 1104. If it is determined that the lesser offense is included within the charged offense, then the focus of inquiry shifts to the second step of the methodology, which this Court has explained as follows:

"Step two of the *Lawrence* inquiry is designed to insure that the final instructions which are given to the jury conform to the issues and evidence before it. *Harris v. State* (1977), Ind., 366 N.E.2d 186, 188. To guard against a violation of this long-standing principle, the trial court examines that evidence which tends to prove or disprove the commission of the elements which compose the greater and lesser included offenses. Based on its examination, the trial court should instruct the jury on the lesser included offense only when it finds that there is 'evidence of probative value from which the jury could properly find the defendant guilty of such lesser included offense.' *Lawrence v. State, supra* [375 N.E.2d] at

---

3. During its 1981 regular session, the legislature amended IC 35–42–2–2(b) by making the infliction of serious bodily injury on another person by means of a deadly weapon a Class C felony. *See,* West's Ind. Leg. Serv. (1981), vol. 5, at 1213.

4. The Indiana Supreme Court cited *Roddy* with approval and specifically applied its two-step methodology in *Swafford v. State* (1981), Ind., 421 N.E.2d 596, 603; *see also, Goodpaster v. State* (1980), Ind., 402 N.E.2d 1239, 1242–44.

213, *quoting Hash v. State* (1972), 258 Ind. 692, 698, 284 N.E.2d 770, 774 (DeBruler, J., dissenting)."

*Roddy, supra,* 394 N.E.2d at 1110. However, the trial court's duty to give an instruction upon a lesser included offense is not triggered automatically by the admission of evidence that indicates the lesser offense was committed. The trial court must engage in an additional inquiry:

"A trial court should not give an instruction and form of verdict on a lesser included offense simply because the evidence indicates that the defendant committed the lesser offense in the process of the acts for which he or she was charged.

"To be sure, the evidence must establish the commission of the elements which comprise the lesser included offense in order for an instruction and form of verdict on that offense to go to the jury. However, the major focus of the evidentiary test is not on the elements of the lesser offense, but rather on the element(s) which distinguish(es) the offense charged from the lesser included offense. If the evidence which indicates that the defendant did in fact commit the distinguishing element is uncontroverted, then the instruction on the lesser included offense should not be given to the jury. If, however, as the Court stated in *Lawrence*, evidence of probative value raises a 'serious dispute' regarding whether the defendant in fact committed the distinguishing element(s), an instruction and form of verdict on the lesser included offense should be given to the jury. *Lawrence v. State, supra* [375 N.E.2d] at 213."

*Roddy, supra,* 394 N.E.2d at 1111.

In applying the *Roddy* methodology to the present case, it is evident that crimi-nal recklessness constitutes a lesser included offense of battery in this case. Under the facts stated in the charging instrument, every essential element of the lesser offense (criminal recklessness) would have been committed during the course of the charged crime (battery), and each essential element of criminal recklessness as defined in IC 35–42–2–2(b) constitutes an essential element of battery, as charged as a Class C felony. Employing the statutory definition of battery, the charging instrument alleged that Johnson "did inflict serious bodily injury" upon Jones by knowingly touching him in a rude, insolent, and angry manner. As stated previously in this opinion, criminal recklessness is committed when a person "recklessly, knowingly, or intentionally inflicts serious bodily injury on another person." IC 35–42–2–2(b). Under the facts alleged in the charging instrument, Johnson could not have committed a battery of the Class C felony type, as charged, without inflicting serious bodily injury upon Jones. Thus, criminal recklessness is a lesser included offense of battery under the facts of the present case.

Application of the second step of the *Roddy* methodology requires an examination of the evidence adduced at trial and the elements that distinguish battery from criminal recklessness. In some cases, battery is distinguished from criminal recklessness by the actor's state of mind during the commission of the offense. The degree of culpability required of battery is that the touching occur "knowingly or intentionally." IC 35–42–2–1. Criminal recklessness is committed when the actor "*recklessly,* knowingly, or intentionally" inflicts serious bodily injury upon another person.[5] IC 35–42–2–2(b). The actor's state of mind is a

---

5. The degrees of culpability are defined in IC 1976, 35–41–2–2 (Burns Code Ed., 1979 Repl.), as follows:

"(a) A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so.

"(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so.

"(c) A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

"(d) Unless the statute defining the offense provides otherwise, if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct."

distinguishing element only when the "recklessly" portion of IC 35–42–2–2(b) is the basis of a lesser included offense instruction on criminal recklessness. In the present case, both instructions tendered by Johnson employed the concept of a "reckless" infliction of serious bodily injury as a basis for advising the jury of the offense of criminal recklessness. Instruction No. 4 relied exclusively upon recklessly as the degree of culpability, and Instruction No. 5 used "recklessly" as one of the degrees of culpability for the offense of criminal recklessness. Thus, the distinguishing element which this Court must examine is Johnson's state of mind during the shooting.[6]

The evidence relating to Johnson's state of mind during the commission of the offense is controverted. There is evidence in the record from which the jury could have inferred that Johnson "knowingly or intentionally" shot Jones. On the other hand, the record contains evidence indicating that Johnson's drug use immediately before the basketball games may have impaired his mental state to a degree that rendered him incapable of formulating the requisite intent for the commission of a battery. The evidence relevant to Johnson's diminished mental state consists of Johnson's testimony that he smoked marijuana before playing basketball and that he was "high" during the game in which he shot Jones. Jones, the victim, testified that Johnson's eyes were "spaced" and "glazed over" when the shooting occurred. Jones acknowledged that Johnson appeared to be in a "trance" and that it was his opinion that Johnson was under the influence of drugs. A witness to the shooting stated that Johnson "could have been" under the influence of drugs during the incident, but that witness was unable to express a definite opinion.

Without commenting upon the persuasiveness of the evidence relating to the effect of Johnson's drug use upon his mental state during the shooting, this Court merely observes that the evidence is controverted, or using the terminology employed by the Supreme Court in *Lawrence, supra,* the evidence is in "serious dispute." It is this very conflict in the evidence relating to the element that distinguishes battery from criminal recklessness that necessitated the giving of an instruction upon the lesser offense. The trier of fact must be afforded the opportunity to assess the weight and credibility of the evidence relating to the distinguishing element. As recently observed, "[r]efusal to give a lesser included offense instruction where there is a 'serious dispute' takes this function from the jury." *Tucker v. State* (1981), Ind.App., 419 N.E.2d 1355, 1356 (transfer pending).

■ It must be emphasized that the trial court, in determining whether to give a lesser included offense instruction, is prohibited from weighing the seriousness of the dispute in the evidence relating to the distinguishing element. This Court stated:

"We emphasize that the Supreme Court's use of the expression 'serious dispute' was not intended to suggest that the standard for determining when a jury should be instructed on a lesser offense is an arbitrary one. If a trial court was permitted to accept or refuse a tendered instruction upon the basis of its subjective appraisal of the seriousness of a dispute, it would be empowered to intrude upon the exclusive province of the jury to determine the facts. Ind.Const. art. 1, § 19. The expression 'serious dispute' merely serves as a catch-phrase for the more explicit test utilized by the Courts: When there is *any evidence of probative value, or a reasonable inference therefrom, that the defendant did not commit the distinguishing element(s), then the jury should be instructed on the lesser*

---

**6.** It is arguable that the "touch[ing] ... in a rude, insolent, or angry manner" requirement of the battery statute constitutes another element that distinguishes battery from criminal recklessness. The offense of criminal recklessness does not have such a requirement, although instances of criminal recklessness under IC 35–42–2–2(b) that are not accompanied by a touching in a rude, insolent, or angry manner are difficult to conceive. In the present case, it is uncontroverted that an unlawful touching occurred when Johnson set in motion the instrumentality that resulted in injury to Jones.

*offense* . . . ." (footnotes omitted, emphasis original)

*Roddy, supra*, 394 N.E.2d at 1111.

"[T]he expression 'serious dispute' is analogous to the phrase 'genuine issue' (of material fact) which, pursuant to Ind. Rules of Procedure, Trial Rule 56(C), a trial court employs when it rules upon a Motion for Summary Judgment. In either case, the court does not base its decision upon an evaluation of the relative merits of each party's evidence; it instead determines if there is any evidence—or a reasonable inference therefrom—to establish the existence of a factual controversy. If so, the matter is left for the jury to decide, as is required by art. 1, § 19 of the Indiana Constitution."

*Roddy, supra*, 394 N.E.2d at 1111, n. 26. Recent cases addressing the trial court's refusal to give lesser included offense instructions indicate that Indiana courts are examining the evidence relating to the distinguishing element to determine if the evidence is "controverted" or "uncontroverted." The Supreme Court recently upheld the trial court's refusal to give a lesser included offense instruction because the evidence was "uncontroverted." *Cherry v. State* (1981), Ind., 414 N.E.2d 301, 308. This Court (First District) employed similar terminology when it stated:

"[T]he court did not err in refusing to instruct the jury on the included offense of criminal mischief where there was no dispute as to whether or not the distinguishing elements of damage by *fire* to a *dwelling* had been established... Here the evidence was *uncontroverted* that Smith's dwelling had been damaged by fire...." (fire and *dwelling*, emphasis original; *uncontroverted*, emphasis added)

*Myers v. State* (1981), Ind.App., 422 N.E.2d 745, 748; *see also, Harkins v. State* (1981), Ind.App., 415 N.E.2d 139, 141. Thus, determining whether evidence is in "serious dispute" is akin to reviewing the evidence to determine if *any* factual controversy exists.

■ The trial court in the present case apparently believed that the evidence relating to Johnson's state of mind was controverted. The trial court instructed the jury that it could consider any evidence of intoxication that "may produce a state of mind which incapacitates a party from forming or entertaining specific intent." This instruction was presumably directed toward the evidence relating to Johnson's drug use immediately before the basketball games. An adequate basis for an intoxication instruction exists only when "the evidence of intoxication, if believed, is such that it could create a reasonable doubt in the mind of a rational trier of fact that the accused entertained the requisite specific intent." *Williams v. State* (1980), Ind., 402 N.E.2d 954, 956; *see also, Ives v. State* (1981), Ind., 418 N.E.2d 220, 224–25. While the trial court believed the evidence of Johnson's drug use justified an intoxication instruction, it apparently thought that same evidence did not justify the giving of an instruction upon criminal recklessness, an offense that in some cases requires a lesser degree of culpability than is required of battery. It is this "subjective appraisal" of the evidence relating to the distinguishing element in which the trial court is prohibited from engaging. *Roddy, supra*, 394 N.E.2d at 1111. The trial court's unexplained incongruity in choice of instructions further compounded its error.

The affirmative obligations of the trial court in instructing the jury on the law are set forth in IC 1976, 35–1–35–1 (Burns Code Ed., (1979 Repl.)):

"In charging the jury the court must state to them all matters of law which are necessary for their information in giving their verdict. . . ."

This fundamental principle was recognized when this Court, quoting from *Eby v. State* (1905), 165 Ind. 112, 117, 74 N.E. 890, 891, stated:

" 'It is the right of a party,' said this court in *Banks v. State* (1901), 157 Ind. [190] 203, 60 N.E. [1087] 1092, 'in either a civil or criminal prosecution to endeavor to maintain his theory of the case, and for that purpose he should be permitted to give to the jury any and all competent

evidence which tends to support the same; and where any evidence has been introduced which tends to sustain such theory, it is also his right to have the jury fully advised upon the law in relation thereto by proper instructions.'" (brackets original)

*Roddy, supra*, 394 N.E.2d at 1111, n. 27, and when it more recently observed:

"[A] party is entitled to have an instruction based on his/her theory of the case if it is within the issues and if there is any evidence fairly tending to support it.

"*State v. Maudlin* (1981), Ind.App., 416 N.E.2d 477;

"*Whitaker v. St. Joseph's Hospital* (1981), Ind.App., 415 N.E.2d 737."

*Campbell v. City of Mishawaka* (1981), Ind. App., 422 N.E.2d 334, 339. In the present case, it is evident that the trial court failed to fulfill its duty to instruct the jury upon the law relevant to the evidence that supported Johnson's theory of defense.

■■ The failure to give a tendered instruction does not constitute reversible error if the refused instruction contained an incorrect statement of law or if the substance of the refused instruction was covered adequately by other instructions given by the trial court. *Hall v. State* (1980), Ind., 405 N.E.2d 530, 533. There is no doubt that the substance of the criminal recklessness instructions tendered by Johnson was not covered by other instructions. Both instructions represented accurate statements of law. Thus, the trial court erred in refusing to give the criminal recklessness instructions to the jury.

An additional point must be discussed. The trial court's error in refusing to give the criminal recklessness instructions was not molified by Johnson's failure to tender definitional instructions on words used in his tendered instructions. The present case is readily distinguishable from the recent case of *Smith v. State* (1981), Ind., 422 N.E.2d 1179, in which the Supreme Court upheld the trial court's refusal to give an instruction upon criminal recklessness as a lesser included offense of attempted murder because (1) the tendered instruction was "confusing" in that it did not advise the jury that "the crime of criminal recklessness is one of the charged offenses, nor that it is a lesser-included offense of the charged offenses," *and* (2) the defendant-appellant failed to tender additional instructions upon the definitions of words of art contained in the criminal recklessness instruction. Regarding its second basis for affirmance, the Supreme Court observed that the tendered instruction incorporated the words "recklessly, knowingly or intentionally" from the criminal recklessness statute, IC 35–42–2–2. The Court held that these words are "terms of art" with "special legal definitions" which appear in IC 1976, 35–41–2–2 (Burns Code Ed., 1979 Repl.), and that "the use of a word of art in an instruction requires a further instruction on the definition of that word." *Smith, supra*, 422 N.E.2d at 1184.

In the present case, Johnson tendered criminal recklessness instructions that employed the words "recklessly, knowingly, or intentionally," but he did not submit instructions upon the definitions of those words. However, it is evident that Johnson's instructions did not encompass the infirmities of the criminal recklessness instruction tendered by the defendant-appellant in *Smith*. First, the instructions tendered by Johnson were not, using the Supreme Court's term, "confusing." Johnson's tendered instructions would have fully advised the jury that criminal recklessness constituted a lesser included offense of battery under the facts of the present case. Second, the absence of instructions defining the words "recklessly, knowingly, or intentionally" was not fatal because the record reveals that the trial court and the parties to the action were operating under the belief that the jury understood the legal meanings ascribed to those words. When instructing the jury upon the offense of battery, the trial court used the words "knowingly" and "intentionally" in describing the degrees of culpability required for the commission of battery. Whether Johnson acted with the requisite intent for the commission of a battery was clearly an is-

sue of importance in light of the evidence of Johnson's drug use. It was the evidence of Johnson's drug use that formed the factual basis for the intoxication instruction in which the trial court advised the jury to examine the evidence relating to Johnson's mental state during the commission of the shooting. Yet, the trial court did not instruct the jury upon the definitions of the words representing the requisite standard of culpability—"knowingly" and "intentionally." Neither the State nor Johnson requested instructions upon the statutory definitions of the words. Because the statutory and ordinary meanings of those words coincided, the trial court and the parties to the action apparently intended to permit the jury to rely upon the ordinary meanings of those words in deliberating the battery charge. Likewise, Johnson did not request an instruction upon the definition of the word "recklessly" when he tendered his criminal recklessness instructions.

■ It is a fundamental rule of jury instructions that words that are understood by persons of average intelligence, experience, and education need not be defined or explained by the trial court. *Martin v. State* (1974), 262 Ind. 232, 246, 314 N.E.2d 60, 70, *reh. denied*, 262 Ind. 247, 317 N.E.2d 430, *cert. denied* (1975), 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 841; *Fuller v. State* (1973), 261 Ind. 376, 381, 304 N.E.2d 305, 309. In a case decided over two months before Johnson's trial was held, the Supreme Court made the following observations in upholding the trial court's refusal to give instructions defining the terms "malice" and "in a sudden heat":

> " 'Terms used in instructions should be defined by the court where they have a technical meaning, or may be misapplied by the jury; but where the terms are in common use and are such as can be understood by a person of ordinary intelligence they need not be defined or explained in the absence of anything in the charge to obscure their meaning.' 23A C.J.S. Criminal Law § 1191, p. 484."

*McFarland v. State* (1979), Ind., 390 N.E.2d 989, 994. In *McFarland*, the Supreme Court

established the rule of law that terms that have technical meanings or special legal definitions *should* be defined or explained, but those terms *need not* be defined or explained if they are in "common use and are such as can be understood by a person of ordinary intelligence." *McFarland, supra*, 390 N.E.2d at 994. The terms "malice" and "in a sudden heat" indubitably have what the Supreme Court called in *Smith, supra*, 422 N.E.2d at 1184, "special legal definitions." *See, Drollinger v. State* (1980), Ind., 408 N.E.2d 1228, 1243 ("malice"); *Kincaid v. State* (1976), 265 Ind. 345, 352, 354 N.E.2d 199, 204, *cert. denied* (1977), 430 U.S. 972, 97 S.Ct. 1660, 52 L.Ed.2d 365 ("malice"); *Holloway v. State* (1976), 170 Ind.App. 155, 159, 352 N.E.2d 523, 526 ("sudden heat"). Nevertheless, those words were not required by the Supreme Court in *McFarland* to have been the subject of definitional instructions because the jury applied the common sense understanding of the words, which understanding coincided with the "special legal definitions" ascribed to those words under Indiana law.

A conclusion similar to that reached in *McFarland* was reached by the Supreme Court in *Valentine v. State* (1971), 257 Ind. 197, 273 N.E.2d 543. The defendant-appellant in *Valentine* tendered an instruction that contained a definition of "great bodily harm" as defined by the Supreme Court in *Froedge v. State* (1968), 249 Ind. 438, 445, 233 N.E.2d 631, 636. The trial court refused to give the instruction, and the Supreme Court upheld the trial court's decision. The Court noted that the phrase "great bodily harm," while specifically defined in *Froedge*, "defines itself, and that these words must be taken in their plain, or ordinary or usual sense." *Valentine, supra*, 257 Ind. at 202, 273 N.E.2d at 546. The Court thus held that "further clarification of the phrase, great bodily harm, was unnecessary." *Id.*

The recent case of *Jenkins v. State* (1981), Ind., 424 N.E.2d 1002, represents another case in which the Supreme Court reiterated the fundamental rule that juries should ascribe the common and ordinary meanings to

words used in instructions that are predicated upon the language of criminal statutes. In *Jenkins*, the jury, after deliberating for several hours, asked the trial court to define the words "sexual gratification" as used in an instruction predicated upon the offense of criminal deviate conduct, IC 1976, 35–42–4–2 (Burns Code Ed., 1979 Repl.). The statute proscribes "deviate sexual conduct," which is defined at IC 1976, 35–41–1–2 (Burns Code Ed., 1979 Repl.), as "an act of sexual gratification involving a sex organ of one person and the mouth or anus of another person." In response to the jury's request for a definitional instruction upon the words "sexual gratification," the trial court in *Jenkins* modified the original criminal deviate conduct instruction by adding the following sentences to the instruction:

"Sexual gratification may or may not include ejaculation."

\* \* \* \* \* \*

"Webster defines gratification as a source of gratification or pleasure."

The Supreme Court held that the trial court's modification of the original instruction constituted judicial interference with the deliberation process of the jury. The Court observed:

"[The original instruction] utilized the term 'sexual gratification' from the statute establishing the offense of criminal deviate conduct. The term has no special legal meaning as used in the statute, but is used in its ordinary sense. A jury of twelve would discern its meaning upon fair and open deliberation. There is no rule of law requiring the judge to instruct juries regarding the meaning of such common terms. . . ."

*Jenkins, supra,* at 1004.

The principles enunciated by the Supreme Court in *McFarland, Valentine,* and *Jenkins* continue as controlling precedent and must be applied to the present case. The trial court and the parties to the action indicated implicitly that the jury could rely upon the ordinary meanings of the words "knowingly" and "intentionally" by not defining the words for use with the battery instruction.

Likewise, the word "recklessly," as it was used in the criminal recklessness instructions tendered by Johnson, took on its ordinary meaning, which coincided with its statutory definition. The ordinary meaning of the word "reckless," as it appears in *The Random House Dictionary of the English Language* (Unabridged Ed.), is "utterly unconcerned about the consequences of some action; without caution." The word "reckless" is often used and understood by persons unversed in the law in the context of reckless driving, and the ordinary meaning of "reckless driving," as it appears in *Webster's Third New International Dictionary* (Unabridged Ed.), is "driving that evidences a deliberate or culpably negligent disregard of life and property and creates an unreasonable risk of harm to others." These definitions reflect the ordinary meaning or common usage of the word "reckless." When the common sense understanding of the word "recklessly" is compared with the "special legal definition" of the word that appears in IC 35–41–2–2(c), it is evident that the legal definition of the word merely represents the codification of its meaning ascribed to it by persons of average intelligence, experience, and education. As noted before, the word "recklessly" is defined in IC 35–41–2–2(c) as follows:

"(c) A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."

A simple comparison of the legal and ordinary meanings of the word "recklessly" manifests the similarity between the two.

The conclusion that the statutory definitions of the degrees of culpability merely reflect the codification of the ordinary meanings ascribed to those terms is reinforced by observations made by the Appellate Court of Illinois. In addressing the trial court's failure to give a definitional instruction upon the term "reckless," the court stated:

"It is also argued that the jury was insufficiently instructed on the offense

charged since the trial court failed to instruct the jury as to the meaning of the term 'reckless' on its own initiative. The Criminal Code defines the term in generalities to the end that the definition may be applied to an infinite variety of acts. While it would seem desirable to instruct the jury in the language of the Code wherever possible, we are convinced that the failure of the court to do so in the instant case did not work a substantial prejudice upon the defendant. The general definition of 'recklessness' contained in section 4–6 of the Code [Ill.Rev.Stat. 1965, ch. 38, par. 4–6], when applied to the factual situation developed by the State's uncontradicted evidence relating to the manner in which the victims met their deaths, does not differ from the meaning of the term as commonly understood. Thus the fact that the jury was not instructed as to the statutory definition of the term did not constitute reversible error. (e. g., the term 'reckless' when applied to the act of driving an automobile is defined by Webster's Third International Dictionary as 'driving that evidences a deliberate or culpably negligent disregard of life and property and creates an unreasonable risk of harm to others.')." (brackets original)

*People v. Maldonado* (1971), 3 Ill.App.3d 216, 224–25, 278 N.E.2d 225, 231; *see also, People v. Hairston* (1976), 39 Ill.App.3d 747, 749, 350 N.E.2d 497, 498–99 (trial court's failure to give definition of the term "recklessness" would not constitute prejudicial error in any event since the legal definition of the term does not vary from its commonly understood usage."). This Court is in complete agreement with the rationale employed by the courts in *Maldonado* and *Hairston*.

 There is a presumption that, in the absence of a showing to the contrary, words used in a jury instruction are used and understood by the jury in their ordinary and usual sense. *White v. State* (1899), 153 Ind. 689, 692, 54 N.E. 763, 765. In fact, the Supreme Court has labelled the practice of trying to define words and phrases that are readily understood by the jury as "not a commendable one." *Cunacoff v. State* (1923), 193 Ind. 62, 64, 138 N.E. 690, 691. It is only when an instruction contains a technical term whose meaning may not be comprehended readily by persons unversed in the law that the terms must be defined or explained to ensure proper application of the law by the jury. *McFarland, supra,* 390 N.E.2d at 994; *Martin, supra,* 262 Ind. at 246, 314 N.E.2d at 70. Whether to give a definitional instruction is a matter that remains vested within the trial court's discretion, *Coonan v. State* (1978), 269 Ind. 578, 586, 382 N.E.2d 157, 163–64, *cert. denied* (1979), 440 U.S. 984, 99 S.Ct. 1798, 60 L.Ed.2d 246; *McPherson v. State* (1978), Ind.App., 383 N.E.2d 403, 413, and that discretion should be exercised when a definitional instruction "is necessary to dispel jury confusion." *Stevens v. State* (1976), 265 Ind. 396, 409–10, 354 N.E.2d 727, 736, *reh. granted on other grounds,* 265 Ind. 410, 357 N.E.2d 245.

 It must be emphasized that statutes should be drafted in language that is readily comprehensible to persons unversed in the law. Article 4, § 20, of the Indiana Constitution provides:

"Every act and joint resolution shall be plainly worded, avoiding, as far as practicable, the use of technical terms."

The import of this constitutional directive becomes more compelling when the statute in question is a criminal statute. It is axiomatic that criminal statutes must be drafted in definite terms which are sufficiently explicit to enable the public to ascertain what conduct is proscribed. Furthermore, criminal statutes must be strictly construed against the State and in favor of the accused. *Cape v. State* (1980), Ind., 400 N.E.2d 161, 164; *Hanic v. State* (1980), Ind. App., 406 N.E.2d 335, 338. The underlying purpose of the rule of strict construction was stated as follows:

"The object of this rule of interpretation is to establish a rule of certainty for the protection of the individual. *Caudill v. State* (1946), 224 Ind. 531, 69 N.E.2d 549. Such a rule is also in keeping with the presumption of innocence. . . ."

*Lasko v. State* (1980), Ind.App., 409 N.E.2d 1124, 1127. The following passage from the leading treatise on statutory construction evinces the relevancy of the rule of strict construction to the language employed in criminal statutes:

> "Several kinds of reasons, all of them grounded in a policy of tenderness for the rights and freedoms of individuals who find themselves caught in the toils of the law, are commonly advanced in justification of the rule that penal statutes should be strictly construed. One such reason is that strict construction is a means of assuring fairness to persons subject to the law by requiring penal statutes to give clear and unequivocal warning in *language that people generally would understand*, as to what actions would expose them to liability for penalties and what the penalties would be." (footnotes omitted; emphasis added)

3 Sutherland, *Statutory Construction* § 59.-03, at 7 (4th ed. 1974), *citing, United States v. Bass* (1971), 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488; *Bouie v. City of Columbia* (1964), 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894; *Kordel v. United States* (1948), 335 U.S. 345, 69 S.Ct. 106, 93 L.Ed. 52. The text of the treatise continues:

> "As declared in the language of a court: '. . . the rule that penal statutes are to be strictly construed . . . is a fundamental principle which in our judgment will never be altered. *Why?* Because the lawmaking body owes the duty to citizens and subjects of making *unmistakably clear* those acts for the commission of which the citizen may lose his life or liberty. . . ." (emphasis original; omissions original)

Sutherland, *supra*, at 7, *quoting, Snitkin v. United States* (7th Cir. 1920), 265 F. 489, 494. A criminal statute that employs technical terms that are not readily understood by persons unversed in the law would violate the underlying purpose of the rule of strict construction. Proscribed conduct would not be "unmistakably clear" in such cases. Thus, this Court is reluctant to deem any words in a criminal statute to have technical meanings that are unknown to persons of average intelligence, experience and education.

The legislature undoubtedly had the rule of strict construction and Article 4, § 20, of the Indiana Constitution in mind when it enacted the statutory definitions of the degrees of culpability. The legislature merely codified the ordinary meanings of those words. It did not ascribe some arcane meaning of those words. In the absence of evidence demonstrating that tendered instructions confused the meanings of the words, it is proper to conclude that a jury would have ascribed the correct meanings to the words "recklessly, knowingly, or intentionally."

 In the present case, it does not appear that the criminal recklessness instructions tendered by Johnson would have confused the jury as to the differing degrees of culpability. Two of the words were used and the third was intended to be used in congruence with their ordinary meanings. The fact that a particular term employed in a jury instruction is defined in the criminal code or in case law does not necessarily require the statutory or case law definition to be contained in an instruction when the statutory or case law use of that term merely represents the codification of the common usage or ordinary meaning of the term. To require a definitional instruction upon every significant but understandable term of a jury instruction would impose an unnecessary burden upon the State and criminal defendants, particularly in light of the numerical limitation on instructions imposed by Rule 8(A) of the Indiana Rules of Criminal Procedure. Thus, the outcome of Johnson's appeal is not altered by his failure to tender definitional instructions.

Reversed and remanded for a new trial.

GARRARD, J., concurs in result with opinion.

HOFFMAN, P. J., dissents with opinion.

GARRARD, Judge, concurring.

I concur with the result reached by Judge Staton, but for the reasons hereafter stated I am more concerned with a different problem presented by the statute now before us.

Appellant Johnson was charged with and convicted of battery as a class C felony, i. e., battery committed by means of a deadly weapon or one inflicting serious bodily injury. *See* IC 35–42–2–1. The critical issue in the appeal is whether the trial court properly refused Johnson's tendered instruction which would have advised the jury that they might find him guilty of criminal recklessness, a class D felony.

In examining that question the parties and Judge Staton have dwelled upon the meaning and purpose of an offense based upon a culpability standard of recklessness. While that analysis presents a legitimate issue concerning included offenses, it misses the invidious duplicity which the legislature has unwittingly provided in IC 35–42–2–2.

That statute provides,

"(a) A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness, a class B misdemeanor. However, the offense is a class A misdemeanor if the conduct includes the use of a deadly weapon.

(b) A person who recklessly, knowingly, or intentionally inflicts serious bodily injury on another commits criminal recklessness, a class D felony."

Because of the use of the disjunctive "or" and the inclusion within the definition of "knowingly" and "intentionally" the legislature has created a duplicate offense to the various battery crimes, as well as murder (IC 35–42–1–1) and voluntary manslaughter (IC 35–42–1–3).[1]

The statute contains no basis for differentiating between the offenses and thus leaves it to the unbridled discretion of the

charging authority which offense will be prosecuted.

I have grave misgivings about the appropriateness of such schemes in a society which has as its goals equal justice and fair play. I am mindful, however, of Mr. Justice Frankfurter's frequent admonitions that we are not, and should not be, free in questions of constitutional due process to draw on our merely personal and private notions. *See, e. g., Rochin v. California* (1952), 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183.

From the point of view of the federal constitution, such overlapping statutes continue to pass muster as to due process so long as the particular statute gives fair notice of the elements of the offense and penalty for violation, and as to equal protection, so long as the statutes are not employed to treat different recognizable *classes* differently. *U. S. v. Batchelder* (1979), 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755; *Berra v. U. S.* (1956), 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013.

We, however, are confronted under the Indiana Constitution with an obligation significantly different than that which permitted the *Berra* court to conclude that the trial court might properly refuse to charge the jury as an overlapping offense which carried a lesser penalty.[2] In *Berra* the court pointed out that the role of the jury in federal court was to decide only issues of fact, taking the law as given by the court. 76 S.Ct. at 688. Thus, said the Court, the question of law was strictly one for the court.

Article 1, § 19 of the Constitution of Indiana requires that,

"In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

In construing this provision our Supreme Court has held that it does not require a trial court to misapply the law by instruct-

---

1. "Serious bodily injury" as used in IC 35–42–2–2(b) is defined by IC 35–42–1–2 to include injury that causes death.

2. The overlapping statutes in *Berra* made it both a felony and a misdemeanor to file a fraudulent tax return with intent to evade payment of taxes.

ing juries on offenses that are not properly includable lesser offenses to the principal offense charged.

However, those cases are not relevant to the issue where the legislature has created overlapping offenses as it did in the criminal recklessness statute.

Under such circumstances, upon proper request, I believe the accused is absolutely entitled to have the jury instructed on an overlapping offense carrying a lesser penalty, and Johnson must be given a new trial because of the court's refusal in this case. If the evidence is sufficient to sustain his conviction of the battery charged (and it is) it proves him guilty of criminal recklessness as well. If we are going to permit such overlapping statutes to co-exist, then the jury must be permitted to make its constitutionally mandated determination of the law that shall apply.

Finally, I believe Judge Hoffman's reliance upon *Smith v. State* (1981), Ind., 422 N.E.2d 1179 is misplaced.

Certainly, where an instruction contains words of art it is proper for the court to additionally instruct on the meaning of such terms when properly requested to do so. *Illinois Central Gulf R. Co. v. Parks* (1979), Ind.App., 390 N.E.2d 1073; *Love v. Harris* (1957), 127 Ind.App. 505, 143 N.E.2d 450. On the other hand, no such definitional instruction need be given for words of common usage readily understood by laymen. *Martin v. State* (1974), 262 Ind. 232, 314 N.E.2d 60, *reh. den.* 317 N.E.2d 430, *cert. den.* 420 U.S. 911.

Ordinarily, for one to be entitled to complain about the failure of the court's instructions to define certain terms, that party must have tendered an instruction supplying the definition. *Edmonds v. State* (1966), 247 Ind. 332, 215 N.E.2d 547; *Flowers v. State* (1956), 236 Ind. 151, 139 N.E.2d 185; *Wilson v. State* (1953), 232 Ind. 365, 111 N.E.2d 709.

We recognize that, generally speaking, the instructions to be given lie largely within the trial court's discretion. *Coonan v. State* (1978), 269 Ind. 578, 382 N.E.2d 157,

*cert. den.* 440 U.S. 984, 99 S.Ct. 1798, 60 L.Ed.2d 246; *Hackett v. State* (1977), 266 Ind. 103, 360 N.E.2d 1000. Yet the purpose is to inform the jury of the law applicable to the facts in such a manner that the jury will not be misled and will arrive at a fair, just and correct verdict. *Foster v. State* (1974), 262 Ind. 567, 320 N.E.2d 745; *Cockrum v. State* (1968), 250 Ind. 366, 234 N.E.2d 479. Thus, it is error to refuse an applicable instruction correctly stating the law where its substance has not been covered by other instructions. *Brannin v. State* (1943), 221 Ind. 123, 46 N.E.2d 599; *see also Wilson v. State* (1978), 268 Ind. 112, 374 N.E.2d 45.

We must then balance the need for the jury to be fairly and fully instructed with that discretion which the trial court must necessarily have to refuse instructions which are likely to confuse or mislead the jury albeit their technically correct, though possibly incomplete, statement of the law.

It seems to me that the better rule would be this: Where such an instruction correctly stating the law and applicable to the issues is tendered, it may be properly refused if its incompleteness is properly objected to by an opposing party. The offeror may then have an opportunity to modify it appropriately or the court may do so on its own. If, however, no objection is made and the court does not elect on its own to modify the instruction, then it should be given and the burden shifts to the opposing party to tender an instruction properly supplying the definition or additional statement. Of course, this presupposes no other instruction covering the point in question. Where the issue is adequately covered by other instructions there is no error in refusing a tendered instruction. *Coker v. State* (1980), Ind.App., 399 N.E.2d 857.

While *Smith v. State, supra,* suggests that error in refusing such an instruction might be unavailable unless the offeror also tendered whatever definitional instructions were ultimately deemed necessary, the case did not necessarily so hold. It appears that the bare contents of the instruction and the context in which it was tendered persuaded

the court that it might be misleading on the facts present. I do not feel it should be extended to other situations.

Finally, the overlapping feature of the statutes now before us and the requirement of "knowingly or intentionally" in both of them seems to require the giving of the instruction. Surely, these are terms not beyond the ken of ordinary laymen.

I would therefore reverse and remand for a new trial.

HOFFMAN, Presiding Judge, dissenting.

I dissent.

I cannot agree with the majority's attempt to "distinguish" this case from the recent Indiana Supreme Court opinion of *Smith v. State* (1981), Ind., 422 N.E.2d 1179 which was authored by Justice Pivarnik and concurred in by Justices Givan, Hunter and Prentice with Justice DeBruler concurring in its result.

In *Smith* the Court held that the trial court properly refused Smith's instruction on criminal recklessness as a lesser-included offense of attempted murder. The instruction offered by Smith used the words "recklessly, knowingly or intentionally," which are terms of art that have special legal definition. The Indiana Supreme Court has held previously that use of a word of art in an instruction requires a further instruction on the definition of that word, and since Smith tendered no additional instructions on the definitions of those terms, the instruction was confusing and properly refused.

The cause before us presents an almost identical situation. Johnson argues that his instructions on criminal recklessness as a lesser-included offense of battery should have been given to the jury. Johnson's tendered instructions contain the terms of art of "recklessly, knowingly or intentionally." As did Smith, Johnson tendered no additional instructions on the definitions of those terms. Therefore, as in *Smith*, Johnson's instructions were confusing and properly refused. The *Smith* case is squarely on point, yet the majority avoids this result by attempting to distinguish the two cases.

The majority opinion goes to great lengths to argue that the terms "recklessly, knowingly or intentionally" should be given their ordinary meanings. Yet, in *Smith* the Indiana Supreme Court specifically said that these terms were words of art which required further instructions to define them.

The majority states, "Second, the absence of instructions defining the words 'recklessly, knowingly, or intentionally' was not fatal because the record reveals that the trial court and the parties to the action were operating under the belief that the jury understood the legal meanings ascribed to those words." The record is absolutely void of any evidence to support such a statement. We must be concerned with what knowledge the jurors had and nothing in the record tells us. No one can see into the minds of the members of the jury and know why they believed or understood, much less reflect such knowledge in the written record. And as Judge Staton said in the case of *Barfell v. State* (1979), Ind.App., 399 N.E.2d 377, when a record is silent, the court must refuse to consider evidence which is outside it.

In light of the controlling precedent of *Smith*, the judgment of the trial court should be affirmed.