**Charles HUMES, Appellant**
**(Defendant below),**

, v. ,

**STATE of Indiana, Appellee**
**(Plaintiff below).**

No. 980S381.

Supreme Court of Indiana.

Oct. 6, 1981.

Harriette Bailey Conn., Public Defender, W. Brent Gill, Sp. Asst. Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Charles Humes, was charged with attempted murder, a class A felony, Ind.Code §§ 35–41–5–1 and 35–42–1–1 (Burns 1979 Repl.); criminal confinement, a class B felony, Ind.Code § 35–42–3–3 (Burns 1979 Repl.); and theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1979 Repl.). He was found guilty by a jury of attempted voluntary manslaughter, a class B felony, Ind.Code §§ 35–41–5–1 and 35–42–1–3 (Burns 1979 Repl.), criminal confinement and theft and was sentenced to terms of fifteen, ten and four years respectively, the sentences to be served consecutively. His direct appeal raises the following three issues:

1. Whether the trial court erred in denying defendant's pretrial motion to suppress and in admitting into evidence letters written by defendant to his girl friend;

2. Whether the trial court erred in refusing to give defendant's tendered instruction on recklessness as a lesser included offense; and

3. Whether defendant was properly sentenced.

A summary of the facts from the record favorable to the state shows that on December 13, 1979, Jerry Shake went to visit a friend, Augustine Harbin, at her home at about 8:00 p. m. Harbin said she was leaving at that time and for Shake to return later. About one hour later, Shake returned and parked his automobile in the alley behind Harbin's residence. He knocked on the back door and talked to Harbin in the kitchen while she was washing dishes. Shake testified that he felt something was wrong with Harbin but didn't know what. A few minutes later, defendant entered the kitchen and asked Shake who he was. Shake told him it was none of his business.

Defendant left the kitchen and then returned with a gun. The gun was later identified as Harbin's gun. Shake grabbed a broom, but defendant told him to sit down and not to leave. An argument developed between Harbin and defendant. Defendant began pushing Harbin around and she eventually fell to the floor. The gun discharged once during the struggle. Shake tried to help Harbin, but defendant ordered him to sit back down. Defendant then shot at Shake three times, wounding him in the groin, neck and arm. Shake fell out of his chair and saw that defendant was still pulling the trigger, but the gun was not firing. Defendant then hit Shake on the head with the butt of the gun. Shake was able to get up and run out of the front door, while defendant ran out of the back door and drove off in Shake's car. Defendant was arrested two days later, driving a stolen car. A gun which matched the description of the gun used in the shooting was found in the car.

Harbin testified that at the time of the incident she was arguing with Shake about her refusal to marry him, even though she was pregnant by him. She testified that Shake had a knife rather than a broom stick. She did not see the actual shooting and only remembered hearing three shots fired.

I.

Defendant first contends that the trial court erred in denying his pretrial motion to suppress and admitting into evidence, over a proper in-trial objection, certain letters he had written to Harbin. The eight letters were taken from Harbin's house, pursuant to a search warrant in January, 1980. Defendant had written the letters to Harbin while he was in jail for the instant charges. He argues that there was insufficient factual information in the supporting affidavit from which the reviewing magistrate could have concluded that probable cause existed for the issuance of the search warrant. He further argues that he had a legitimate expectation of privacy in the letters as well as in the premises searched and, therefore, had standing to challenge the validity of the search warrant.

It is well settled that in cases involving Fourth Amendment search and seizure claims, the initial question which must be answered is whether the person who is aggrieved had any personal and legitimate expectation of privacy in the place searched. *Rakas v. Illinois,* (1978) 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387; *Pollard v. State,* (1979) Ind., 388 N.E.2d 496. Here, the record shows that defendant had no proprietary interest in Harbin's house. He was a friend of Harbin and sometimes stayed with her for extended periods of time. However, other persons also regularly stayed in Harbin's house, including her daughter, her brother, and another friend, Kathy Mitchell. Defendant never asserted any property interest in the house and exercised no dominion or control over it. He likewise had no property interest in the letters once they were mailed and received

by Harbin. The letters became Harbin's property and only she could object to their seizure and admission. *Holt v. State*, (1979) Ind., 396 N.E.2d 887; *Pollard v. State, supra.*

We, therefore, conclude that defendant had no legitimate expectation of privacy in Harbin's house or in the letters received by Harbin. Defendant had no standing to challenge the admissibility of letters and there was no error here.

## II.

Defendant next contends that the court erred in refusing his tendered instruction on the offense of recklessness as a lesser included offense of attempted murder. It is well settled that the test for determining whether it was error to refuse instructions on lesser included offenses is embodied in a two-step analysis. It must be determined by looking at the language of the statutes and the indictment or information whether the lesser offense is necessarily included within the greater and also whether there has been evidence introduced at trial to which the included offense instruction was applicable. *Minton v. State*, (1978) 269 Ind. 39, 378 N.E.2d 639; *Lawrence v. State*, (1978) 268 Ind. 330, 375 N.E.2d 208; *Harris v. State*, (1977) 266 Ind. 661, 366 N.E.2d 186; *Roddy v. State*, (1979) Ind.App., 394 N.E.2d 1098.

In this case, an analysis of the statutes involved as well as of the charging instrument convinces us that the offense of recklessness is not a lesser included offense of the crime of attempted murder. Defendant was charged with attempted murder and the court gave instructions covering that offense and the included offenses of voluntary manslaughter and battery. The charging instrument read in pertinent part:

> "On or about the 13th day of December, 1979, in Tippecanoe County, State of Indiana, Charles Humes did attempt to commit the crime of murder by knowingly and intentionally shooting a loaded firearm at and against the body of Jerry Shake, which conduct constituted a substantial step toward the commission of said crime of murder [.]"

It is clear that no element of reckless behavior was included in this charge. In fact, we now find that it would be error to include any charge of reckless behavior under our general attempt statute. We have clearly held that our general attempt statute, Indiana Code § 35–41–5–1 (Burns 1979 Repl.), can have application only to specific intent crimes and therefore there are no statutory crimes of attempted involuntary manslaughter or attempted reckless homicide in this state. *Clemons v. State*, (1981) Ind., 424 N.E.2d 113; *Smith v. State*, (1981) Ind., 422 N.E.2d 1179; *Rhode v. State*, (1979) Ind.App., 391 N.E.2d 666.

Defendant argues that the offense of recklessness is a lesser included offense of battery and would apply in his case. However, an examination of this offense as well as of the general attempt statute convinces us that it does not apply. Ind.Code § 35–42–2–2 (Burns 1979 Repl.) defines the offense of recklessness as follows:

> "35–42–2–2 Recklessness
>
> "Sec. 2. (a) A person who, recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal recklessness, a Class B misdemeanor. However, the offense is a Class A misdemeanor if the conduct includes the use of a vehicle or deadly weapon.
>
> "(b) A person who recklessly, knowingly, or intentionally inflicts serious bodily injury on another person commits criminal recklessness, a Class D felony."

The language in this statute appears contradictory at first glance since the concept of "recklessly" is placed in juxtaposition with the terms "knowingly or intentionally." However, a closer study of this section of the code, the definitions of the terms involved, and the comments provided by the Indiana Criminal Law Study Commission reveals that the *essential* element of this offense is reckless behavior. Intentional acts involving an actual injury are covered in the offenses of homicide, manslaughter and battery. Likewise, any intentional acts which do not actually result in an injury

but are a substantial step toward the commission of those crimes are covered by the general attempt statute.

Therefore, it is clear that the offense of recklessness in the present statutory scheme must include the essential element of reckless behavior and is a general intent offense. The comments provided by the Indiana Criminal Law Study Commission include the following explanation of the purpose of this statute:

"Reckless conduct is new to Indiana law. The inspiration for this section comes from the reckless endangerment sections of the Federal Criminal Code § 1613 (Study Draft 1970) and the Model Penal Code § 211.2 (Proposed Official Draft 1962). It is analogous in its provisions to involuntary manslaughter except that no homicide is required hereunder. * * * "The crime defined by this section is new by this name and aims to encompass every reckless conduct which creates a substantial risk of bodily injury; or recklessly causes bodily injury or serious bodily injury to another." West's Ann.Ind.Code § 35–42–2–2, page 373.

The legislature has also provided the following definitions for the terms involved as stated in Ind.Code § 35–41–2–2 (Burns 1979 Repl.):

*"35–41–2–2 Culpability*

"(a) A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so. "(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so. "(c) A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."

The comments provided after this section further illustrate the differences between reckless and intentional acts.

" 'Recklessly' requires conscious and unjustifiable disregard. * * * It is a form of intentional harm-doing in that it is

volitional in a wrong direction. Recklessness, however, differs from intentionality in that the actor does not seek to attain the harm; rather he believes that the harm will not occur." West's Ann.Ind. Code § 35–41–2–2, page 117.

A consideration of the above statutes and comments shows that our legislature clearly intended the offense of recklessness to be a general intent crime wherein a specific *mens rea* is not a crucial element. The terms "knowingly" and "intentionally" are not misplaced in this statute defining a general attempt crime, since reckless behavior does involve some intentional elements. We defined the concept of reckless behavior in the following manner when we dealt with the crime of reckless homicide.

"But while the intention to do or omit the act resulting in injury to another is a necessary ingredient of reckless homicide, willfulness in the sense of a design, purpose, or intent to inflict an injury is not a necessary element of the offense. In other words, to be guilty of a reckless disregard for the safety of others, it is not necessary that one intend the harm which results from it." *Beeman v. State,* (1953) 232 Ind. 683, 692, 115 N.E.2d 919, 923.

From all of the above, it is clear that the crime of recklessness does not require an intent to accomplish a result which would constitute a crime. Recklessness is shown by a disregard for the harm that might result and the offense is not a specific intent crime.

■ Since we have clearly held that our attempt statute can have application only to specific intent crimes, and there is no element of specific intent in the offense of recklessness, we hold that the offense of recklessness is not a lesser included offense of the crime of attempted murder and, further, that there can be no crime of "attempted recklessness." *See Clemons v. State, supra; Salrin v. State,* (1981) Ind. App., 419 N.E.2d 1351; *Rhode v. State, supra.* Accordingly, the tendered instruction on recklessness as a lesser and included offense of attempted murder was properly refused.

### III.

Defendant finally contends that his sentence was improper for three reasons. First, he contends that the trial court erred in failing to disclose the aggravating circumstances which would justify the addition of two years to the basic two-year sentence on the theft charge. The record does not support this contention.

At the sentencing hearing, the trial court had a detailed presentence report before him. He heard evidence from defendant about errors in the report and about other mitigating circumstances. He heard arguments from both parties. The evidence showed that defendant had a juvenile record, several prior adult convictions of assault and a conviction for armed robbery. There was also evidence that defendant was a suspect in a rape charge and was currently an escapee from a minimum security facility in Tennessee.

■ The judge stated that he was willing to disregard the rape charge and not consider it whatever. He further stated that there were some things that he could not disregard, however, such as "the three similar convictions of violent crime" and the fact that defendant "has been committing violent crimes and jeopardizing the lives and safety of people with weapons for a long, long time." He then sentenced defendant to fifteen years on Count I, ten years on Count II, and four years on Count III. The judge's statements in this case show that he based his determination of the increased sentences upon a consideration of the specific facts of the instant crime and the aggravating and mitigating circumstances involved. Ind.Code § 35–4.1–4–7 (35–50–1A–7 Burns 1979 Repl.); *Pilant v. State*, (1981) Ind., 422 N.E.2d 1216; *Gardner v. State*, (1979) Ind., 388 N.E.2d 513. The statement of reasons here was sufficient to support the sentences given including the enhanced sentence on theft.

■ Defendant further argues that it was improper for the court to give him consecutive sentences since the same aggravating circumstances were considered for the consecutive sentences as were used for the basis for the enhanced sentences on Counts I and III. The court stated:

"And in view of the past criminal history and a pattern of violent crime, the court feels obliged to provide that these sentences be consecutive, one after the other, not all at the same time."

We have consistently held that under our present sentencing statutes the alternative ways of increasing a particular sentence are not mutually exclusive. A court may, upon consideration of relevant facts and information, increase the basic penalties, impose consecutive sentences or both. *Washington v. State*, (1981) Ind., 422 N.E.2d 1218; *Abercrombie v. State*, (1981) Ind., 417 N.E.2d 316; *Inman v. State*, (1979) Ind., 393 N.E.2d 767.

■ Here, the state had requested that a maximum penalty of forty-four years be given to defendant. The sentence of twenty-nine years which defendant was given included both an increase of seven years over the basic penalties and the consecutive terms and was clearly within the limits of the trial court's discretion. The trial court gave sufficient aggravating circumstances to support both the enhanced sentences and the imposition of consecutive terms. Under the circumstances of this case, we cannot say that the sentences are manifestly unreasonable. Ind.R.Ap.Rev.Sen. 2.

■ Defendant finally contends that since there were several errors on his presentence investigation report, the trial court should have ordered a new report prepared before conducting the sentencing hearing. We find no merit to this contention. Most of the complained of errors were in defendant's juvenile record from Shelby County, Tennessee. Although twenty-one separate offenses were listed there, the report also explained that most of the records had been destroyed and there were only records of the actual disposition of two offenses. Defendant was given ample opportunity at the sentencing hearing to point out the errors to the court. The trial judge was fully informed of all the facts and circumstances and understood which parts

of the report were to be corrected or supplemented. It is clear that it is the defendant's responsibility to bring to the trial court's attention any disputed facts regarding sentencing criteria. *Gardner v. State*, (1979) Ind., 388 N.E.2d 513. Defendant was given ample opportunity to do this in this case and there was no need for a second presentence report.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.