Larry G. **JOHNSON**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 482S146.

Supreme Court of Indiana.

May 24, 1982.

Harriette Bailey Conn, Public Defender of Ind., Robert H. Hendren, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

ON PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us on a petition to transfer filed by the State of Indiana from the Third District Court of Appeals.

Defendant-appellant Larry G. Johnson was found guilty by a jury of battery, a Class C felony. Johnson was committed to the Department of Corrections for a period of five years by the trial court. The Court of Appeals reversed the judgment of the trial court, finding that the trial court erred in refusing to give instructions tendered by

Johnson. *Johnson v. State*, (1981) Ind.App., 426 N.E.2d 91, rehearing denied, 428 N.E.2d 248 (Ind.App.). We conclude that the Court of Appeals erred on this issue and accordingly grant transfer and vacate its opinions. We will also dispose of other issues raised by appellant and not reached by the Court of Appeals.

The facts are not in dispute and appear to be as follows:

"On August 6, 1978, Johnson and Brian Jones were playing basketball at a playground in Fort Wayne, Indiana. While trying to slap the ball away from Johnson, Jones fouled Johnson. Jones immediately acknowledged that he had fouled Johnson, but Johnson accused Jones of committing the foul intentionally. The game resumed without further altercation. In the next game, Johnson and Jones collided on the court. As Jones attempted to stand, Johnson stepped over him. Jones asked Johnson if 'he did that on purpose.' Johnson replied, 'Nigger, if you want to start some shit, we can start it.' Johnson then drew a handgun from his pocket and shot Jones in the chest."

426 N.E.2d 91 at 92.

After shooting Jones, Johnson got in his automobile and drove off.

Johnson was charged with and convicted of battery, a Class C felony, which is committed when a person "knowingly or intentionally touches another person, in a rude, insolent or angry manner" and such touching "results in serious bodily injury to any other person or if it is committed by means of a deadly weapon." Ind.Code § 35–42–2–1 (Burns 1979). Johnson contends the trial court committed reversible error when it refused to give two of his tendered instructions, which he claimed were tendered for the purpose of instructing the jury upon the offense of criminal recklessness as a lesser included offense of battery. Criminal recklessness is defined in Ind.Code § 35–42–2–2(b) (Burns 1979) and provides as follows: " . . . (b) A person who recklessly, knowingly, or intentionally inflicts serious bodily injury on another person commits criminal recklessness, a class D felony."

The tendered instructions in question were as follows:

### INSTRUCTION NO. 4

"If the jury is unable to find that the defendant knowingly or intentionally committed the acts he has been charged with but does find that the Defendant committed those acts recklessly, the Defendant may be found guilty of recklessly inflicting serious bodily injury on another person, a lesser included offense."

### DEFENDANT'S FINAL INSTRUCTION NO. 5

"If the evidence shows beyond a reasonable doubt that the defendant recklessly, knowingly or intentionally inflicted serious bodily injury on another person, the jury may find the defendant guilty of Criminal Recklessness, a Class D felony."

The trial court refused to give both of these instructions to the jury.

It was the holding of the Court of Appeals that instructions on criminal recklessness, as a lesser included offense of battery, should have been given to the jury since the evidence as to Johnson's state of mind during the commission of the offense was controverted. There was evidence that Johnson had smoked marijuana prior to playing the basketball game and the Court of Appeals reasoned that this may have evidenced an impairment of his mental state to a degree that rendered him incapable of formulating the requisite intent for the commission of a battery. Johnson had testified that he smoked marijuana immediately prior to the game and that he was high during the game in which he shot Jones. Jones, the victim, testified that Johnson's eyes were spaced and glazed over when the shooting occurred. In response to leading questions Jones acknowledged that Johnson did appear to be in a trance and that, in his opinion, Johnson was under the influence of drugs. In Johnson's testimony, however, Johnson gave a clear and detailed description of the events leading up to and includ-

ing the shooting of Jones. He said he carried the .25 automatic pistol because he knew these basketball games got rough and he wanted to be able to protect himself. He said that he did not want to use the gun unless he had to, but if he got into a corner he wasn't going to let anybody "stomp" him. He stated that at the time of the incident when he and Jones confronted each other on the basketball court, he felt that many of the players, who he could not identify, were friends of Jones and felt that he had no friends there, since he was a stranger to the crowd. He then said he reached in his pocket and pulled out the pistol, which was loaded with a shell in the chamber, and shot Jones in the chest. He then looked at Jones and said, "Do you want some more?" and Jones answered, "No." The defendant then strode from the basketball court and left in his automobile.

█ It is well settled that the test for determining whether it was error to refuse instructions on lesser included offenses is embodied in a two-step analysis. It must be determined by looking at the language of the statutes and the indictment or information whether the lesser offense is necessarily included within the greater and also whether there has been evidence introduced at trial to which the included offense instruction was applicable. *Humes v. State,* (1981) Ind., 426 N.E.2d 379; *Minton v. State,* (1978) 269 Ind. 39, 378 N.E.2d 639; *Lawrence v. State,* (1978) 268 Ind. 330, 375 N.E.2d 208; *Harris v. State,* (1977) 266 Ind. 661, 366 N.E.2d 186; *Roddy v. State,* (1979) Ind.App., 394 N.E.2d 1098.

█ We provided in *Harris, supra,* and *Lawrence, supra,* that final instructions are to be given to the jury which conform to the issues and evidence before the jury. The trial court should instruct the jury on a lesser included offense only when it finds that there is evidence of probative value from which the jury could find properly that the defendant was guilty of such lesser included offense. *Lawrence, supra; Hash v. State,* (1972) 258 Ind. 692, 698, 284 N.E.2d 770–774, (DeBruler, J., dissenting). In *Humes, supra,* we considered the offense of

recklessness as it contrasted with those charges contemplating intentional acts such as homicide, manslaughter and battery. In *Humes* we were dealing with an attempted murder charge which differs in the case before us since here we are dealing with an intentional battery. However, the analysis of recklessness is pertinent to the question before us. Therefore, our analysis in *Humes* is equally pertinent to the issue here as follows:

"Therefore, it is clear that the offense of recklessness in the present statutory scheme must include the essential element of reckless behavior and is a general intent offense. The comments provided by the Indiana Criminal Law Study Commission include the following explanation of the purpose of this statute:

'Reckless conduct is new to Indiana law. The inspiration for this section comes from the reckless endangerment sections of the Federal Criminal Code § 1613 (Study Draft 1970) and the Model Penal Code § 211.2 (Proposed Official Draft 1962). It is analogous in its provisions to involuntary manslaughter except that no homicide is required hereunder. * * *

'The crime defined by this section is new by this name and aims to encompass every reckless conduct which creates a substantial risk of bodily injury; or recklessly causes bodily injury or serious bodily injury to another.' West's Ann.Ind. Code § 35–42–2–2, page 373.

The legislature has also provided the following definitions for the terms involved as stated in Ind.Code § 35–41–2–2 (Burns 1979 Repl.):

'35–41–2–2 Culpability

(a) A person engages in conduct 'intentionally' if when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so.

(c) A person engages in conduct 'recklessly' if he engages in the conduct in

plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.'

The comments provided after this section further illustrate the differences between reckless and intentional acts.

'Recklessly' requires conscious and unjustifiable disregard. * * * It is a form of intentional harm-doing in that it is volitional in a wrong direction. Recklessness, however, differs from intentionality in that the actor does not seek to attain the harm; rather he believes that the harm will not occur.' West's Ann.Ind.Code § 35–41–2–2, page 117.

A consideration of the above statutes and comments shows that our legislature clearly intended the offense of recklessness to be a general intent crime wherein a specific *mens rea* is not a crucial element. The terms 'knowingly' and 'intentionally' are not misplaced in this statute defining a general attempt crime, since reckless behavior does involve some intentional elements. We defined the concept of reckless behavior in the following manner when we dealt with the crime of reckless homicide.

'But while the intention to do or omit the act resulting in injury to another is a necessary ingredient of reckless homicide, willfulness in the sense of a design, purpose, or intent to inflict an injury is not a necessary element of the offense. In other words, to be guilty of a reckless disregard for the safety of others, it is not necessary that one intend the harm which results from it.' *Beeman v. State*, (1953) 232 Ind. 683, 692, 115 N.E.2d 919, 923.

From all of the above, it is clear that the crime of recklessness does not require an intent to accomplish a result which would constitute a crime. Recklessness is shown by a disregard for the harm that might result and the offense is not a specific intent crime."

*Humes v. State*, (1981) Ind., 426 N.E.2d 379 at 383.

Considering the charge and the evidence before the jury, we cannot say the trial court committed reversible error in refusing to give instructions on criminal recklessness when it is apparent the battery was accomplished by the direct act of pulling a pistol and firing it into the body of the victim. Furthermore, the State's position is well taken that defendant's tendered instructions here suffered from the same inadequacy we found in similar ones in *Smith v. State*, (1981) Ind., 422 N.E.2d 1179. In *Smith*, defendant had tendered instructions which recited the test describing the crime of criminal recklessness. We found in that case that the instruction would do no more than confuse the jury because it was an incomplete instruction. It did not tell the jury that criminal recklessness was one of the charged offenses or that it was a lesser included offense of any of the charged offenses. Furthermore, it did not define the words recklessly, knowingly, or intentionally, which are defined in the statutes, and which are words of art, requiring a further instruction on their definition to be of use to the jury. *Smith, supra*, at 1184. We found, therefore, that the instructions tendered by Smith in their inadequate form were confusing and properly refused by the court. The same problem exists with defendant's tendered instructions 4 and 5 here, differing only in form from those tendered by Smith. Here Johnson did not tender the text of the reckless-ness statutes. Although tendered instruction 4 did end with the words "a lesser included offense," it did nothing more to explain this to the jury. The jury was not advised that there was a criminal recklessness statute, that it was one of the charged offenses, or in what way they could use it as an included offense. It furthermore did not define in any way the meaning of recklessly, knowingly or intentionally as it appeared in these instructions, and therefore would confuse the jury in their deliberations.

Nor do we agree with the Court of Appeals that evidence of drug use by the

defendant as presented to the jury here, would require the jury to consider whether otherwise intentional acts might be considered reckless because of such impairment. As our analysis in *Humes, supra*, concluded, such a definition is not contemplated in the recklessness statutes. Furthermore, neither battery nor criminal recklessness are specific intent crimes, and voluntary intoxication is not, therefore, a defense to either one of them under Indiana Code § 35–41–3–5(b) (Burns 1979). *Norris v. State*, (1981) Ind., 419 N.E.2d 129; *Zickefoose v. State*, (1979) Ind., 388 N.E.2d 507, 510–11; *Preston v. State*, (1972) 259 Ind. 353, 356, 287 N.E.2d 347, 348. Nevertheless, the trial court did give defendant's tendered instruction on intoxication as a defense to battery. For all of the above reasons, the trial court did not err in refusing to give defendant's tendered instructions 4 and 5.

▇▇ Appellant further asserts that the trial court erred in not granting his motion for mistrial due to a remark made by the prosecuting attorney during closing arguments. The prosecutor stated as follows:

> ". . . The only amazing thing, ladies and gentlemen, about the case and it's really not pertinent insofar as the prosecution goes, the only amazing thing is that Brian Jones wasn't killed and we'd be here on a murder case, and the only other amazing thing is that the defendant isn't charged with attempted murder."

Defendant objected to the prosecutor's statement and the court sustained the objection. The defendant then moved for a mistrial but the court denied the motion and admonished the jury as follows:

> "COURT; Ladies and gentlemen of the Jury, just to make sure, as I have indicated before, what the lawyers say is not evidence. You've heard all of the evidence and as to the last statement by the Prosecutor concerning the matter of attempted murder, that is not the charge. The charge here is battery and that's all there is for you to consider. Again, I reiterate, what the lawyers say and do in the courtroom is not evidence in the case.

> So far as the instructions on the law, the Court will take care of that after they're done arguing."

The statement of the prosecutor does not, of course, attempt to inform the jury of some unrelated crime that the defendant may have committed or may have been guilty of, but in effect gives his analysis of the facts that are already before them. *See Pavone v. State*, (1980) Ind., 402 N.E.2d 976, 978. It is presumed that an admonishment is sufficient to cure any prejudice that might have attached to the defendant, unless it appears that such prejudice is so severe that it places the defendant in grave peril. *Morse v. State*, (1980) Ind., 413 N.E.2d 885, 889. The remarks here were not of such serious nature. As the court indicated in his admonishment, the instructions told the jury they were to consider only the evidence they heard and recounted to them what charges were before them for their consideration as to the guilt or innocence of the defendant. There is no error on this issue.

Transfer is granted. The Court of Appeals opinions are vacated. The trial court is affirmed.

GIVAN, C. J., and PRENTICE, J., concur.

DeBRULER and HUNTER, JJ., concur in result with separate opinions.

HUNTER, Justice, concurring in result.

On the basis of Ind.Code § 35–41–3–5(b) (Burns 1979 Repl.) and *Norris v. State*, (1981) Ind., 419 N.E.2d 129, I concur in the result reached by the majority; defendant's voluntary intoxication was not a defense to the crime of battery, an offense which requires only general intent. *Humes v. State*, (1981) Ind., 426 N.E.2d 379.

Consequently, we need not decide whether the two-step methodology outlined in *Lawrence v. State*, (1978) 268 Ind. 330, 375 N.E.2d 208, warranted that defendant's instruction be given. If, however, voluntary intoxication were a factor relevant to the jury's consideration, the evidence does reveal a dispute regarding the defendant's

mental state which, pursuant to step two of the *Lawrence* test, would have required the trial court to give the instruction. *See also, Easley v. State,* (1981) Ind., 427 N.E.2d 435; *Hester v. State,* (1974) 262 Ind. 284, 315 N.E.2d 351; *Hash v. State,* (1972) 258 Ind. 692, 284 N.E.2d 770; *Cole v. State,* (1922) 192 Ind. 29, 134 N.E. 867; *Murphy v. State,* (1980) Ind.App., 414 N.E.2d 322; *Roddy v. State,* (1979) Ind.App., 394 N.E.2d 1098. Notwithstanding Justice DeBruler's renunciation of step two of the *Lawrence* methodology, it serves sound purposes, as explained in *Hester v. State, supra* :

> " 'A jury might have power to stultify itself by returning a verdict contrary to what it knew to be the law * * *. But the court, when giving instructions, is not required to insult the jurors by a suggestion that they may do so.' " 262 Ind. at 289, 315 N.E.2d at 354, quoting *Cole v. State, supra,* 192 Ind. at 37, 134 N.E. at 870.

Step two of the *Lawrence* methodology insures that the final instructions given to the jury conform to the issues and evidence before it, which is the object of instructions. *Harris v. State,* (1977) 266 Ind. 661, 366 N.E.2d 186. *See also, Hash v. State, supra; Roddy v. State, supra.* For this reason, the two-step methodology outlined in *Lawrence,* although inapplicable here, should not be abandoned.

It should also be noted that in *McNary v. State,* (1981) Ind., 428 N.E.2d 1248, this Court unanimously held that a defendant need not tender an instruction defining the term "included offense" in conjunction with an instruction on a lesser and included offense. We explained:

> "[T]he term 'included offense' is clearly a word of art to which a layman would not attach a common meaning. Yet it is not necessary to the jury's intellectual machinations that it understand the definition of 'included offense'; rather, it is only significant that the jury understand the role an included offense plays in its deliberations. The jury must be informed that should it find the defendant did not commit the element or act which distinguishes the charged crime from the in-

cluded offense, it may nonetheless find the defendant guilty of the lesser and included offense." *Id.* at 1252.

Here, defendant's tendered instruction number 4 satisfied our *McNary* analysis, just as did the trial court's instruction in *McNary. Id.* Statements in the majority opinion to the contrary are consequently misplaced.

Furthermore, I am not convinced that an instruction which embodied the definitions of "knowingly," "intentionally," and "recklessly" was necessarily required of defendant, even if the resolution of that question were required for our disposition. It is true that as one basis for our holding in *Smith v. State,* (1981) Ind., 422 N.E.2d 1179, we indicated the terms "knowingly," "intentionally," and "recklessly" were words of art by virtue of the fact that they are statutorily defined. The fact that a word has been statutorily defined, however, does not *ipso facto* render it a term of art with special legal connotations; nor does the fact that a particular word is characterized as a "term of art" necessarily require that it be defined for the jury. *See: Jenkins v. State,* (1981) Ind., 424 N.E.2d 1002 (statutory definition of "sexual gratification" need not be communicated to jury since phrase is commonly understood); *McFarland v. State,* (1979) Ind., 390 N.E.2d 989 (trial court's refusal to give instructions on "malice" and "sudden heat" upheld); *Valentine v. State,* (1971) 257 Ind. 197, 273 N.E.2d 543 (trial court's refusal to give instruction on "great bodily harm," as defined in *Froedge v. State,* (1968) 249 Ind. 438, 233 N.E.2d 631, upheld).

The crucial test is not whether the word is defined by statute, but rather if a definition must be supplied to the jury in order for it to intelligently implement the term in its assessment of the evidence. *McNary v. State, supra; Jenkins v. State, supra; McFarland v. State, supra.* Utilizing this test, our neighboring jurisdiction of Illinois has rejected the conclusion that a jury does not readily understand the meaning of the term "recklessly," which is in common usage. *People v. Hairston,* (1976) 39 Ill.

App.3d 747, 350 N.E.2d 497. Consequently, while the issue is not dispositive here, we must recognize that our case precedent is imbued with distinctions lacking in substantive differences. An incongruity arises even within the context of this case, for while defendant is faulted for failing to tender instructions defining "knowingly" and "intentionally," an understanding of those terms was as necessary to a conviction of the greater crime charged, battery, as it was to a potential conviction for the lesser offense of criminal recklessness. *See* Ind.Code § 35–42–2–1 (Burns 1980 Supp.); Ind.Code § 35–42–2–2(b) (Burns 1979 Repl.).

Finally, it should be acknowledged that the prosecutor's comments during final argument were improper. His statements to the effect that "the only amazing thing is that Brian Jones wasn't killed and we'd be here on a murder case, and the only other amazing thing is that the defendant isn't charged with attempted murder" do not reflect his analysis of the facts in evidence, nor was the subject matter of the comments relevant to the question before the jury.

Vested in the public office of the prosecutor is discretion to charge a suspect with the commission of any crime appropriate to the facts. Regardless of whether defendant might have been charged with the attempted murder of Brian Jones, that option was foresaken—for whatever reason—and the crime of battery was charged. It was not appropriate then to suggest that a conviction for battery was warranted because defendant's culpability exceeded that crime, for that was a matter outside the scope of the issue before the jury and the evidence relevant thereto. *Washington v. State*, (1979) Ind., 390 N.E.2d 983. It is not proper to invite jurors to consider matters outside the evidence, nor is it appropriate to phrase arguments in a manner designed to implant prejudice within them. *Limp v. State*, (1982) Ind., 431 N.E.2d 784; *Remsen v. State*, (1981) Ind., 428 N.E.2d 241.

While the prosecutor's statements were improper, the trial court properly admonished the jury to disregard the comments. For that reason, I join the ultimate conclusion that defendant was not placed in grave peril by the remarks. *Id.; Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843.

I concur in result.

DeBRULER, Justice, concurring in result.

Indiana Code § 35–41–1–2(3), effective at the time appellant committed the offense of which he stands convicted, defined "included offense" among other things as an offense that "differs from the offense charged only in respect that . . . a lesser kind of culpability, is required to establish its commission." Appellant was charged with battery, with having knowingly touched the putative victim in a rude, insolent, and angry manner, and with having inflicted serious bodily injury, a gunshot wound to the chest, upon him with a deadly weapon. The offense of criminal recklessness in one of its manifestations is the reckless infliction of serious bodily harm. Criminal recklessness is in this case a lesser and included offense in the battery, by reason of the above quoted statute, since it differs from the battery charged only in that it requires a lesser kind of culpability, i.e., recklessness. Appellant was therefore entitled, upon request and proffer thereof, to a correct instruction defining criminal recklessness as an offense which the jury might find him guilty of, in lieu of battery. I agree however, that the instructions which were tendered were insufficient for this purpose.

The two-step analysis in *Lawrence v. State*, (1978) 268 Ind. 330, 375 N.E.2d 208, to be applied by the trial court in determining whether to give a lesser included offense instruction was formulated as an attempt to deal rationally with the holding in *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770, which requires the court to examine the proof in the case as well as the statute defining the crime charged, the statute defining the crime argued as being lesser and included, and the charging instrument. I dissented to that holding on

the basis that the added requirement of considering the status of proof in a case was ill-conceived and harmful. Further experience with the rule has reaffirmed my belief that the *Hash* holding is mischievous, and should be abandoned, and I have retreated from that belief in opinions of this Court only in obeisance to stare decisis. I remain convinced that the determination of lesser and included offenses should be independent of the proof presented at trial. I do not share in the sense of disappointment with the jury system, which is central to the rationale of the *Hash* holding.

Indiana Code § 35–41–3–5, in the form in which it existed at the time of the crime charged, provided in section (b) that "voluntary intoxication is a defense only to the extent that it negates specific intent." Under this formulation of the rule, drunkenness does not excuse any offense. However, if in proving the elements of an offense, the prosecution must prove a particular intent or state of mind, drunkenness may be considered, as it may show the incapacity of the mind to have formed that intent, and thereby negate the existence of a fact necessary to conviction. In proving the offense charged in this case, the prosecution was bound by the statute to prove not only that he touched the victim by discharging a weapon into his body, but that at the time of doing so, "he was aware of a high probability that he is doing so." Ind.Code § 35–41–2–2. Such an awareness in my opinion is, under our present battery statute, a fact necessary to conviction. The trial court therefore did not, as I see it, contravene the law when it gave an instruction to the jury on the manner in which it should consider proof of intoxication.