John J. **GOSSELIN**, et al., Plaintiffs,

v.

Heidi J. **McGILLEN**, et al., Defendants.

Nos. C–89–436–D, CA–92–0030L.

United States District Court,
D. Rhode Island.

April 15, 1993.

John J. Gosselin, pro se.

Susan J. Cheney, Donald J. Perrault, Nancy J. Smith, Stephen J. Judge, William A. Grimes, Roland E. Morneau, Jr., Wayne Beyer, for defendants.

## ORDER

LAGUEUX, Chief Judge.

Plaintiff John Gosselin's objections, received April 12, 1993, to the Magistrate Judge's Report and Recommendation dated March 17, 1993, have no merit. Therefore, the Report and Recommendation of the Magistrate Judge, that summary judgment be granted to all defendants on all claims asserted against them by plaintiff John Gosselin, hereby is adopted by the Court.

Since, the motions of all defendants for summary judgment on all of plaintiff John Gosselin's claims have been hereby granted, plaintiff John Gosselin's cross-motion for partial summary judgment dated March 3, 1993 hereby is denied.

No judgments will enter in this case until the claims of the other plaintiffs are resolved.

## REPORT AND RECOMMENDATION

BOUDEWYNS, United States Magistrate Judge.

This action was brought pursuant to Title 42 U.S.C. § 1983, alleging violations of rights protected by the United States and New Hampshire Constitutions, as well as federal and state laws. It is now before the Court on defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] The defendants argue that they are entitled to summary judgement because there are no material facts in dispute and they are entitled to judgment as a matter of law. This matter has been referred to me for preliminary review, findings and recommended disposition.[2] This report and recommendation will address solely those claims brought by plaintiff John Gosselin ("Gosselin") against the defendants. The remaining claims of the other plaintiffs[3] will be discussed in a forthcoming report and recommendation.

Based on the following analysis, I recommend that defendants' motions for summary judgment be granted insofar as they relate to all of Gosselin's claims. There are no genuine issues of material fact, and defendants are entitled to judgment as a matter of law on a number of grounds, including, but not limited to, Gosselin's failure to establish

---

**1.** The summary judgment motions were all filed on February 17, 1993. No objection has been filed, as of the date of this Report, by any plaintiff. Timely objection should have been filed by March 6, 1993.

**2.** 28 U.S.C. § 636(b)(1)(B); *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

**3.** The other plaintiffs in this case are Raymond and Martha Gosselin, John's parents, and Christine O'Connor, John's sister.

standing and his failure to present evidence indicating that any Constitutional violation even occurred.

*Procedural History*

The Plaintiff, John Gosselin, is presently serving a forty year sentence for the September 15, 1985 murder of two-year-old Brandon Bieniek. The defendants are Heidi McGillen, who was Gosselin's girlfriend for a period of time after the murder, Stephen E. Merrill, then Attorney General for the State of New Hampshire, Brian Mohl, Deputy Attorney General, Brian T. Tucker, Associate Attorney General, and Kathleen A. McGuire, Assistant Attorney General. Other named defendants are Thomas King, Chief of Police of the Manchester Police Department, Dale Robinson, Wayne C. Richards, Philip Alexakos, Ronald Robidas, and Detective Putney, who were all police officers for the city of Manchester, New Hampshire. Finally, also named as defendants are James Comerford, Chief of Police of the Sandown Police Department, and Stephen Turner, police officer for the Town of Sandown, New Hampshire.

This case originated in the District of New Hampshire. The original complaint was filed on September 16, 1989 and subsequently amended on January 21, 1990. On December 7, 1992, after being transferred to this Court, Defendant's motions to dismiss were withdrawn and all defendant's have now filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

*The Complaint*

In Count I, Gosselin claims that his rights protected by the Fourth and Fifth Amendment, as well as by the New Hampshire Constitution, were violated when McGillen entered Raymond and Martha Gosselin's home on September 16, 1986 to retrieve letters sent to her by John Gosselin. This claim is brought against defendants McGillen, Richards, Robinson, Turner, King, and Cumerford.

In Count II, Gosselin alleges that his rights protected by the Fourth and Fifth Amendment, as well as by the New Hampshire Constitution, were violated when McGillen removed some letters and tapes from the home of Christine O'Connor after visiting with her on April 1, 1987. This claim is brought against defendants McGillen, McGuire, Tucker, Merrill, and King.

In Count III, Gosselin alleges that his rights protected by the Fourth, Fifth and Sixth Amendments, as well as by the New Hampshire Constitution, were violated by the installation of a phone intercept device on McGillen's phone on two occasions. This claim is brought against defendants McGillen, McGuire, Tucker, and Mohl, Robidas, Alexakos and Merrill and King.

Count IV is brought solely by Christine O'Connor and will not be discussed in this Report and Recommendation.

In Count V, Gosselin alleges that his rights protected by the Fourth, Fifth and Sixth Amendments, as well as by the New Hampshire Constitution, were violated when McGillen gave a number of items that were in her car to defendants Alexakos and Robidas. This claim is brought against defendants McGillen, McGuire, Tucker, Robidas, Alexakos, Merrill, and King.

In Count VI, Gosselin alleges that his rights protected by the Fifth and Sixth Amendments, as well as by the New Hampshire Constitution, were violated by the installation of a phone intercept device on McGillen's phone on two occasions in September of 1986 and April of 1987, and when McGillen gave a number of items that were in her car to defendants Alexakos and Robidas. This claim repeats claims brought in Counts III and V. This claim is brought against defendants McGillen, McGuire, Tucker, Mohl, Robidas, Alexakos, Putney, Merrill, and King.

*Facts*

The events leading to this lawsuit began with the police investigation of the murder of two-year-old Brandon Bieniek, who died of extensive head injuries in September of 1985. At the time of the child's murder, Gosselin lived with the victim and his mother in Manchester, New Hampshire. A short time thereafter, he moved out.

In early 1986, Gosselin developed a relationship with Heidi McGillen, who was then seventeen years old. On September 12,

1986, Gosselin was arrested for assaulting her. McGillen filed a report at the Hooksett police station, and the police officers asked her what she knew about Bieniek's death. McGillen recounted that Gosselin told her he had killed the child. She gave the same statement to the Manchester police later that day. On September 19, 1986, Gosselin was indicted for the second degree murder of Brandon Bieniek.

While giving her report to the Manchester police on September 12, 1986, McGillen indicated that she had letters from Gosselin which implicated him in the Bieniek murder. She handed over a box which contained letters and other items he had left in her car. She also said that she had stored some more letters with her clothes and jewelry at the residence of Raymond and Martha Gosselin with their permission. These letters were sent by Gosselin to McGillen using words of address such as "Dearest Heidi" or "Baby, I love you." McGillen had lived with the Gosselin's until September 10, 1986. But even after she left, it is undisputed that she had Raymond and Martha's permission to come and go freely. John Gosselin did not live at the home, and did not have permission to store his personal belongings there. John Gosselin was, in fact, forbidden by his parents from even entering the residence.

On September 16, 1986, Officer Richards of the Manchester Police Department drove McGillen to Martha and Raymond Gosselin's residence in order to retrieve the letters. Sergeant Turner of the Sandown Police Department led the way to the Gosselin residence. The Gosselin's were not home, but McGillen and possibly one of the police officers entered the unlocked residence and picked up her letters, clothes and jewelry. About this time, McGillen gave the letters to the police. Both the items that were in the McGillen's car and the items and letters that were in Raymond and Martha's home were ultimately suppressed at the trial of John Gosselin.

Soon after these events occurred, Heidi McGillen began receiving harassing telephone calls from Christine O'Connor and Martha Gosselin. McGillen agreed to have a telephone intercept device installed on her telephone to record these calls. No calls were received from the plaintiff during the two-day period that the intercept device was operational.

On September 22, 1986, McGillen met with Assistant Attorney General Kathleen McGuire, who instructed McGillen not to have any contact with Gosselin. In December, 1986, McGillen again met with McGuire. Although McGillen maintained that she had not had any contact with Gosselin, she had in fact been visiting him regularly at the jail and was even contemplating marrying him. This came to McGuire's attention when McGillen's mother called and told McGuire about her daughter's contacts with Gosselin. McGillen again promised not to contact Gosselin; nevertheless, she visited with Gosselin frequently between January and March of 1987. During this period, she continued to tell representatives of the Attorney General's office that she was not communicating with him.

In March, 1987, Gosselin dictated a tape recording and gave it to his sister, Christine O'Connor, who then gave it to McGillen. The tape recording directed McGillen to recant her original story to the police. McGillen followed Gosselin's instructions insofar as they directed her to go to his lawyers and tell them that she had made up her story about Gosselin's involvement in the murder. At trial, she testified that had been prepared to lie for John Gosselin in order to prevent his conviction.

At a meeting with representatives of the Attorney General's office on March 31, 1987, McGillen confessed that she had recently lied to Gosselin's defense attorneys. She also turned the tape recording over to the Attorney General's office. The New Hampshire Superior Court allowed this tape to be played at Gosselin's murder trial, and the New Hampshire Supreme Court upheld its admission into evidence.

Also at the March 31 meeting, McGillen indicated that she had stored some more letters from Gosselin at the home of Christine O'Connor. The next day, McGillen went to Christine O'Connor's house and Ms. O'Connor allowed her to enter. After the

two visited for a while, Ms. O'Connor left to get her laundry, telling McGillen she would return in one half hour. When O'Connor did not return, McGillen gathered her personal belongings, including the letters from Gosselin, and left the house. She then turned over the letters and other items to the police. These items were suppressed at the criminal trial.

On April 3, 1987, in response to Gosselin's tape directing McGillen to lie, and in order to investigate and determine whether to prosecute Gosselin for hindering a criminal prosecution, Deputy Attorney General Bruce Mohl approved the second installation of a recording device on McGillen's telephone. The State installed the device on McGillen's telephone with her consent and instructed her to record any telephone calls from Gosselin. This device was activated from April 6 through April 15, 1987, and the period of activation was later extended from April 16 through April 26, 1987. During this period, McGillen received telephone calls from John Gosselin containing statements about the murder of Brandon Bieniek. All of the telephone calls intercepted by the telephone wiretap were initiated by parties other than McGillen. The State agreed not to use these telephone conversations in their case-in-chief against John Gosselin for murder.

John Gosselin was convicted of second degree murder on May 27, 1987. He was sentenced to New Hampshire State Prison for 40 years to life.

*Discussion*

Defendant's motion for summary judgment is made pursuant to FRCP 56(c), which states:

4. Fed.R.Civ.P. 56(c).

5. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

6. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

7. *Id.* at 248, 106 S.Ct. at 2510.

8. *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989).

The judgement sought shall be rendered forthwith if the pleadings, depositions, answers or interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law.

Summary judgment is appropriate then when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[4] Once the movant avers "an absence of evidence to support the non-moving party's case,"[5] the latter must adduce specific facts establishing the existence of at least one issue that is both "genuine" and "material." The mere existence of a factual dispute, of course, is not enough to defeat summary judgment. The evidence relied upon must be "significantly probative" of specific facts,[6] and "material" in the sense that the dispute over them necessarily "affect[s] the outcome of the suit."[7] In other words, the party opposing summary judgment must demonstrate that there are bona fide factual issues which "need to be resolved before the related legal issues can be decided."[8] The First Circuit has concluded that an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

The court's function in ruling on a motion for summary judgment is to determine whether or not such a genuine issue exists, and not to resolve such existing factual issues.[10]

### 1. *Absence of Material Fact Disputes*

Gosselin makes a number of assertions in his complaint that are in dispute with the

9. *Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 105 (1st Cir.1988) quoting *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 248, 106 S.Ct. at 2510.

10. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 248, 106 S.Ct. at 2510; *Local No. 48, United Brotherhood of Carpenters and Joiners v. United Brotherhood of Carpenters and Joiners,* 920 F.2d 1047, 1050 (1st Cir.1990); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

above statement of facts. He states that the letters and personal items which were located in McGillen's car and in the Gosselin's and O'Connor's home were his property; that he had permission to store his property in the various locations; that McGillen had no permission to enter the Gosselin's home and retrieve her belongings; that the police entered the Gosselin's home; that McGillen entered O'Connor's bedroom to retrieve the letters; and, finally, that McGillen was instructed to and did deliberately elicit incriminating statements from Gosselin by telephone. Plaintiff, however, has pointed to no evidence supporting these assertions. Moreover, as is discussed *infra*, they are immaterial to the outcome of the suit. Therefore, I find no genuine dispute as to any material fact.

## 2. *Federal Law Claims*

■ In order to state a cognizable claim under 42 U.S.C. § 1983, a plaintiff must present facts which show that the defendants, while acting under the color of state law, deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.[11] Throughout the complaint, Gosselin alleges violations of rights protected by *state* law. Because Section 1983 gives no redress for deprivations of state-protected rights, defendants are entitled to summary judgment on all such claims in Counts I, II, III, V and VI.

## 3. *Adequate Procedural Remedy*

■ Although John Gosselin alleges deprivations of Fourth, Fifth and Sixth Amendment rights,[12] only the claims relating to illegal search and seizure and invasion of privacy under the Fourth Amendment relate to violations of *substantive* rights. Plaintiffs' Fifth and Sixth Amendment claims are purely *procedural* due process violations which could have been adequately addressed at the criminal trial or on appeal of his criminal conviction.[13] Defendants are thus entitled to summary judgment on all Fifth and Sixth Amendment claims.

## 4. *Standing*

■ In Counts I, II, III, V, and VI, Gosselin makes Fourth Amendment claims for damages based on illegal search and seizure or invasion of privacy. In order to establish standing to assert these claims, a personal and legitimate expectation of privacy in the place searched and the property seized must be demonstrated.[14] Beyond the bald assertions that the letters and other personal items were "property of plaintiff," there is no support for the claim that Gosselin had an expectation of privacy in the items seized. On the other hand, the evidence presented by McGillen clearly establishes that the letters and personal items were addressed to and received by her. Once McGillen received these letters and items, they became her property and Gosselin no longer

---

**11.** *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) *rev'd on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Williams v. City of Boston*, 784 F.2d 430, 433 (1st Cir.1986); *Raper v. Lucey*, 488 F.2d 748, 751 (1st Cir.1973).

**12.** In Count II he alleges that McGillen's retrieval of items in O'Connor's home resulted in deprivation of "rights to due process and equal protection" as guaranteed by the Fifth Amendment. In Count III, he alleges that the installation of a telephone intercept device deprived him of his right to "effectively confront witnesses against him" as guaranteed by the Sixth Amendment. In Count V, he alleges that McGillen's turning over of certain items that were in his car resulted in deprivation of his right to "due process and equal protection" and the right to "effectively confront witnesses" under the Fifth and Sixth Amendment. In Count VI, he alleges that the installation of a phone intercept device and

McGillen turning over items in her car to the police violated his rights to "due process and equal protection" and "effective assistance of counsel" as protected by the Fifth and Sixth Amendments.

**13.** In order to state a cause of action under Section 1983 for violation of a *procedural* due process right, plaintiff must show that the state remedy is inadequate. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) *rev'd on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Plaintiff had an adequate remedy in that he could have asserted these claims at his criminal trial and on appeal.

**14.** *U.S. v. Bouffard*, 917 F.2d 673, 675 (1st Cir. 1990); *Ray v. United States Dept. of Justice*, 658 F.2d 608, 611 (8th Cir.1981); *see also Humes v. State*, 426 N.E.2d 379, 381 (Ind.1981).

had any legitimate expectation of privacy in them.[15]

Likewise, Gosselin had no legitimate expectation of privacy in any of the locations which were allegedly "searched." McGillen stored the items in her car and in the homes of Christine O'Connor and Mr. and Mrs. Gosselin. John Gosselin has demonstrated no claim to possession of or dominion over any of these places. In fact, he was prohibited from entering his parents' home.[16]

■ In Counts III and VI, Gosselin makes another Fourth Amendment claim, this time concerning the installation and use of a recording device on McGillen's phone on two occasions. Similar to the search and seizure claims, there is no Constitutionally protectable expectation of privacy in one's recorded conversations where the person who receives the calls consents to the recording.[17] Under the uncontested facts, all phone calls were recorded by McGillen and initiated by persons other than McGillen. Accordingly, there is no basis on which to claim a Constitutional violation.

In sum, because Gosselin had no reasonable expectation of privacy in the items allegedly seized, the places allegedly searched, or recordings of phone conversations he voluntarily entered into with another person, he lacks standing to assert a Fourth Amendment violation based on any illegal search and seizure or invasion of privacy. Therefore, on this independent basis, summary judgment in favor of all defendants should be entered on John Gosselin's claims in Counts I, II, III, V and VI.

5. *Authority*

■ Even if Gosselin had standing to assert these claims, he has not presented any facts which indicate a violation of Constitutional standards in the area of search and seizure. To the contrary, there is no violation of the Fourth Amendment where a police officer reasonably relies on the consent given by one who has actual or apparent authority.[18]

Count I complains of a search for letters in Raymond and Martha Gosselin's home. McGillen had been living at the Gosselin residence and had permission to store her personal belongings there. She entered through an unlocked door and took items which she reasonably believed belonged to her. At the time of the entry, she had the Gosselin's permission to come and go freely. John Gosselin, on the other hand, was not allowed on the premises. These facts clearly establish that McGillen held a reasonable and good faith belief that she had the right to

15. As is stated in *Humes, supra,* a claimant has no property interest in letters written by him in jail once they were mailed and received by his girlfriend. "The letters became [his girlfriend's] property and only she could object to their seizure and admission." 426 N.E.2d at 381–82.

16. A claimant does not have standing to contest the alleged search of the home of a third party or seizure of property in which he has no possessory or proprietary interest. *See Ray,* 658 F.2d at 611 (no standing to contest search of another's hotel room); *Bouffard,* 917 F.2d at 676 (no standing to contest search of vehicle if claimant has no proprietary interest in, and no right to exclude others from vehicle); *Humes,* 426 N.E.2d at 381 (no standing to contest search of home in which claimant has no property interest and over which he exercises no dominion or control).

17. The Fourth Amendment affords no protection to "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); *see also United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).

18. Consent to a search and seizure exempts such search from the Fourth Amendment warrant requirement. Consent may be given not only by the criminal defendant against whom the fruits of the search are to be used as evidence, but also by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *U.S. v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Even if there is no actual authority for the third party to give consent, if the facts would cause a man of reasonable caution to believe that a person consenting to a search (McGillen) had authority over the premises, the warrantless search is valid, and violates no Constitutional right. *Id.* at n. 7; *Illinois v. Rodriguez,* 497 U.S. 177, 188–189, 110 S.Ct. 2793, 2801–2802, 111 L.Ed.2d 148 (1990).

enter and remove her belongings.[19] Further, there was a sufficient basis on which the police could reasonably believe that McGillen had common authority or other sufficient relationship over the premises in order to remove her belongings.

A similar analysis is applicable to Count II. In this incident, McGillen went to O'Connor's home to retrieve some letters and other personal effects which she had left there. O'Connor allowed McGillen into her home and left her alone while she went to pick up her laundry. Again, McGillen had a good faith and reasonable belief that she had authority to move about the O'Connor home to retrieve her belongings.

Finally, Count V complains that Gosselin's rights against unreasonable search and seizure were violated when McGillen gave the police a diary and letters which were stored in McGillen's car. There is no doubt that McGillen had the authority to "search" her own car.

In sum, McGillen had either real or apparent authority in consenting to or undertaking the alleged searches and seizures. All of the incidents concerning McGillen's actions were indisputably done in good faith and with a reasonable belief that she had authority to enter and remove the items. Further, the police acted in reasonable reliance on this real or apparent authority. This provides an additional basis upon which summary judgement may be granted on all claims made by Gosselin in Counts I, II and V as against all defendants.[20]

### 6. Nonspecific claims

Each of the counts in the complaint contain vague allegations concerning prosecutor and police misconduct which are unsupported by evidence and fail to allege any Constitutional violation. For example, Count I alleges defendant's King and Cumerford and others not presently known are liable because they had "knowledge of" the Constitutional violations of other defendants, or failed to "diligently exercise their duties to instruct, supervise, control and discipline on a continuing basis." Because these remaining allegations are unsupported by specific facts and have failed to demonstrate any conduct constituting a Constitutional violation, the prosecutor and police defendants are entitled to judgement as a matter of law on these claims."[21]

### Conclusion

After review of the pleadings, affidavits and other documents submitted to this Court, I find no genuine issue as to any material fact. Further, as Gosselin has failed to allege any supportable claim for deprivation of his Constitutional rights under Section 1983, the defendants are all entitled to judgment as a matter of law. Accordingly, I recommend that defendants' motions for summary judgment be granted insofar as they relate to Gosselin's claims.

---

19. Under Section 1983, Gosselin has the additional burden of proving that the defendants acted under "color of state law." In the case of defendant McGillen, this could be satisfied by a finding that she acted "together with or ... obtained significant aid from state officials" or engaged in conduct "otherwise attributable to the state." *Wyatt v. Cole*, ─── U.S. ───, ───, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992). Despite the failure of Gosselin to present any evidence in support of his allegation that McGillen was acting in conspiracy with the State, the Court finds it unnecessary to reach the issue. As discussed *infra*, the Court finds that Gosselin has failed to establish standing to assert a Fourth Amendment claim, and he has failed to establish that a Fourth Amendment violation even occurred.

20. Since Gosselin has failed to establish standing and has failed to present evidence which indi-

cates that a Constitutional violation even occurred, I find it unnecessary to reach the issue whether the prosecutor and police defendants are entitled to qualified immunity, as they argue in their briefs.

21. This Court is cognizant that *"pro se ...* petitions will be held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). Nevertheless, "even *pro se* plaintiffs [must] plead specific facts backing up their claims of civil rights violations." *Glaros v. Perse*, 628 F.2d 679, 684 (1st Cir.1980). Specifically, in a Section 1983 claim, the pleading must aver "who did what to whom and why, resulting in a denial of equal protection of the law." *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir.1982), *cert den. Dewey v. University of New Hampshire*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983).

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[22] Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the district court.[23]

March 17, 1993.

22. Rule 32, Local Rules of Court; Fed.R.Civ.P. 72(b).

23. *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).